STATE OF NORTH CAROLINA v. MICHAEL VAN McDOUGALL

No. 86A81

(Filed 5 April 1983)

1. **Criminal Law § 55— blood analysis—testimony by expert**

    The trial court properly permitted testimony by an expert who analyzed during trial a blood sample taken from defendant shortly after his arrest some nine months earlier that an initial screening test showed a positive reaction for the presence of cocaine but that a more sophisticated analysis indicated that there were no signs of cocaine or its metabolites in the blood where the blood sample was not willfully concealed in bad faith by the district attorney but was simply overlooked until it was inadvertently discovered during the trial; defendant was permitted to select an expert for the purpose of analyzing the blood sample; and the witness was qualified to perform the tests in question, they were performed in accordance with scientifically approved procedures, and the procedures used were scientifically reliable.

2. **Constitutional Law § 58; Criminal Law § 126— right to unanimous jury verdict —felony murder—use of disjunctive for underlying felonies**

    Defendant was not denied his right to a unanimous verdict in a felony murder prosecution by the trial court's submission of the underlying felonies of kidnapping and attempted rape in the disjunctive where it is obvious, when the charge is read as a whole, that the court conveyed to the jury that its verdict must be unanimous as to each element of the offenses which were submitted to it.

3. **Homicide § 21.6— first degree murder—perpetration of rape and kidnapping— sufficiency of evidence**

    The State's evidence was sufficient to support conviction of defendant of first degree murder on the theory that the murder was committed in the perpetration of a rape and on the theory that it was committed in the perpetration of a kidnapping where it tended to show that defendant removed the victim from her home at knifepoint and dragged her to an automobile in

1

State v. McDougall

the driveway; defendant stated that he intended to put the victim and her roommate in the trunk of the car and drive them to some undisclosed place; when the roommate threw the car keys to the ground, defendant threw her to the ground and began stabbing her; defendant prevented the victim from escaping from his control by catching her as she began to run across the yard; after he caught the victim, defendant stabbed her until she bled to death; the victim was found on her back with her legs spread wide, her feet nearly up to her buttocks, knees raised and apart, and her nightgown drawn up to her upper chest, exposing her left breast; many of the wounds were inflicted upon the victim while she was in a supine position; an examination of the victim's nightgown indicated that it had been pulled up before some of the stab wounds were inflicted; and when defendant crawled out of the bushes near the victim's body, he had blood smeared upon his shirt and pants consistent with the blood type of the victim.

4. **Criminal Law § 135.4— first degree murder—sentencing hearing—prior felony as aggravating factor—proof of use of threat or violence**

In order for a felony involving the use or threat of violence to be used as an aggravating factor pursuant to G.S. 15A-2000(e)(3) in imposing a sentence for first degree murder, the use or threat of violence to the person need not be an element of the offense. Furthermore, the involvement of the use of threat or violence to the person in the commission of the prior felony may be proven or rebutted by the testimony of witnesses notwithstanding defendant's stipulation of the record of conviction.

5. **Criminal Law § 135.4— first degree murder—sentencing hearing—failure to include mitigating circumstances on verdict form**

While it would be the better practice for the trial court to include on the verdict form all mitigating circumstances which are to be submitted to the jury, the trial court did not err in listing only the statutory mitigating circumstances on the verdict form and failing to list thereon the additional mitigating circumstances submitted to the jury where defendant failed to request that the mitigating circumstances be listed on the written verdict form.

6. **Criminal Law § 135.4— first degree murder—sentencing hearing—instruction on mitigating circumstances**

The trial court's instruction that "[t]he law in North Carolina specifies the mitigating circumstances which might be considered by you, and only those circumstances created by statute . . . may be considered by you" was not erroneous when the phrase "only those circumstances created by statute" is interpreted to include "any other circumstances arising from the evidence which the jury deems to have mitigating value" pursuant to G.S. 15A-2000(f)(9). Moreover, such instruction was not erroneous when considered with the court's submission of ten mitigating circumstances under G.S. 15A-2000(f)(9) and the court's repeated instructions that the jury could find any mitigating circumstance supported by the evidence.

7. **Criminal Law § 135.4— first degree murder—sentencing hearing—instruction on duty to recommend death penalty**

The trial court did not err in instructing the jury that it had a duty to recommend a sentence of execution if it found (1) one or more aggravating cir-

State v. McDougall

cumstances existed, (2) that mitigating circumstances found by it were insufficient to outweigh the aggravating circumstances and (3) that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty.

**8. Criminal Law § 135.4— first degree murder—sentencing hearing—form and instructions on fourth issue**

The form of and instructions on the fourth issue submitted to the jury as to whether the jury found beyond a reasonable doubt that the aggravating circumstance or circumstances it found was or were sufficiently substantial to call for the death penalty were not erroneous where the jury was adequately instructed that before recommending the death sentence it must be satisfied that the sentence was justified and appropriate upon considering the totality of the aggravating circumstances with the totality of the mitigating circumstances found by it. G.S. 15A-2000.

**9. Criminal Law § 135.4— first degree murder—sentencing hearing—order and form of issues**

The order and form of the issues to be submitted to the jury in a sentencing hearing in a capital case should be substantially as follows: (1) Do you find from the evidence beyond a reasonable doubt the existence of one or more of the following aggravating circumstances? (2) Do you find from the evidence the existence of one or more of the following mitigating circumstances? (3) Do you find beyond a reasonable doubt that the mitigating circumstance or circumstances you have found is, or are, insufficient to outweigh the aggravating circumstance or circumstances you have found? (4) Do you find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?

**10. Criminal Law § 135.4— death sentence—excessive or disproportionate to penalty in similar cases—pool of cases to be used**

The pool of cases to be used in determining whether a sentence of death is excessive or disproportionate to the penalty imposed in similar cases is to be composed of all capital cases tried after the effective date of our capital punishment statute, 1 June 1977, in which there were convictions of murder in the first degree, regardless of the sentences imposed, and which have been reviewed on appeal by the N.C. Supreme Court.

**11. Criminal Law § 135.4— death penalty not disproportionate**

A sentence of death imposed upon defendant for a first degree murder committed in the perpetration of a rape and kidnapping was not disproportionate when compared with the pool of similar cases.

Justice FRYE took no part in the consideration or decision of this case.

Justice EXUM dissenting as to sentence.

APPEAL by defendant from judgments entered by *Ferrell, J.*, at the 9 June 1980 Session of Superior Court, MECKLENBURG County.

Defendant was convicted by a jury of assault with a deadly weapon with intent to kill inflicting serious injury, kidnapping, and murder in the first degree. For his conviction of murder in the first degree, defendant was sentenced to death. He was also sentenced to consecutive prison terms of twenty years on the conviction of assault with a deadly weapon with intent to kill inflicting serious injury and life imprisonment on the charge of kidnapping. Defendant appeals to this Court as a matter of right from judgments entered with respect to his convictions of murder in the first degree and kidnapping. Defendant's motion to bypass the Court of Appeals for review of the judgment entered with respect to his conviction of assault with a deadly weapon with intent to kill inflicting serious injury was allowed by this Court 5 March 1982.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, by James C. Fuller, Jr., for defendant.*

MARTIN, Justice.

## I.

Evidence for the state tended to show that at approximately 2:30 a.m. on the morning of 21 August 1979, Officer W. K. Crisler saw a flatbed truck at the intersection of Fairview Road and Sardis Road in the city of Charlotte. The flatbed truck was stopped at a traffic light and was headed away from Charlotte. The police car also was stopped at the intersection, headed in the opposite direction. Because in the mind of the officer it was unusual for such a truck to be driven at that time of night, he observed the truck closely. It was being operated in a normal manner. As the two vehicles passed each other, the officer had ample opportunity to observe the driver of the truck and later identified him as the defendant, Michael McDougall.

The intersection where Officer Crisler observed McDougall was located some one and one-half to two miles from 1420 Blue-

berry Lane in the city of Charlotte. Vicki Dunno and Diane Parker lived together in a house at 1420 Blueberry Lane. Approximately fifteen minutes after Officer Crisler had observed the flatbed truck, Vicki and Diane were wakened by the ringing of their front doorbell. They went to the front door and heard a male begging to be admitted into the house. This person stated that his wife had cut her leg "real bad," that he needed alcohol and bandages for her, and that he needed to call a doctor. He continued to beg for help. Diane went to the bathroom and got alcohol and bandages which she put outside the back door. She then came back to the front of the house. When the person began calling Diane by name, saying that he needed to talk to her, that he needed help, that his wife was hurt, Diane answered for the first time. He said that he was her neighbor Mike, that his wife was hurt "real badly," and that he needed help. After he continued pleading and begging to get into the house, Diane Parker finally opened the door and let him in. The person was Michael McDougall.

The three persons went into the kitchen where Vicki Dunno got the telephone directory off the refrigerator for the purpose of calling a doctor. While Vicki was looking up a number, the defendant walked from the kitchen into the den and began to "check out the house." Diane then took the telephone book from Vicki and started to dial for help. McDougall came back from the den into the kitchen, walked over behind Diane to the corner where there was a cutting board, and picked up a butcher knife. Vicki told Diane to look out, that McDougall had a knife. Defendant grabbed Diane by the arm, put the knife up in front of her face, and told her to put down the phone. Diane tried to get away from him and in the struggle the two knocked over one of the kitchen stools and the phone was knocked out of Diane's hand. They fell to the floor. Diane told Vicki to go next door and get help. Vicki ran out the front door. When she got to the grass, it was wet and she slipped, fell to her hands and knees, and her glasses flew off. She was searching in the grass for her glasses when the defendant came running out of the house, grabbed her by the arm, and told her that she wasn't going anywhere. Diane then came out of the house and was standing in the driveway. She had a knife in her hand and told McDougall that if he hurt Vicki she would kill him. McDougall realized that Diane had a knife. He let go of Vicki,

then went over and started struggling with Diane and got her down in the grassy area beside the bushes. Vicki screamed and pleaded with Diane not to fight because she knew that McDougall had a knife. Vicki heard one of the knives thrown down the driveway. Diane then stopped struggling and McDougall grabbed her and Vicki by the back of the hair and dragged both of them back into the house. When the three got back into the house, Diane was bleeding from her forehead and nose. McDougall was a big man, weighing about two hundred and twenty pounds and standing six feet two inches tall. Vicki was twenty-five years old, five feet ten inches tall, and weighed one hundred and thirty pounds. Diane was twenty-seven years old, five feet two inches tall, and weighed one hundred and twenty-five pounds.

McDougall demanded that Vicki get her car keys. They went to her bedroom; Vicki got the keys and gave them to him. He was still holding Diane and took the two women back outside to the car. He gave the keys to Vicki and asked her which key was the trunk key. He said that he was going to put the women into the trunk until he got where he was going and he would then let them out. Diane told Vicki not to give him the keys, and Vicki threw them away. McDougall was very angry and threw Vicki to the ground and started stabbing her. She screamed to Diane, and Diane ran in the direction of a neighbor's house. McDougall left Vicki and ran after Diane and caught her. Vicki, in the meantime, got up and went into the house where she closed and locked the front door and went into the kitchen to call for help on the telephone. She dialed the emergency number, 911, and reported the incidents. Lynda McDougall, the wife of the defendant, then telephoned and asked Vicki what was happening. Vicki told her that she had been stabbed and that her roommate was outside with the assailant.

When the police arrived they found Diane Parker's body sprawled in front of 1400 Blueberry Lane, Michael McDougall's home. Vicki Dunno gave a description of the defendant to the officers and told them what had happened. An ambulance arrived and Vicki Dunno was taken to the hospital, where she remained in intensive care for some time. Her condition required surgery, and she has been left with permanent scarring as a result of being stabbed some nine times.

Diane Parker's body was clothed only with a nightgown, which had been pulled up to her chest, exposing her pubic area and one breast. Her knees were pulled up and her legs parted wide. Her genitalia appeared to have some liquid upon it. Diane had been stabbed some twenty-two times. She also had other contusions about her body. Any one of several of the stab wounds could have caused her death. At least two of the stab wounds entered her heart. Most of the wounds had been inflicted while she was in a prone position. She had cuts across the palm of her hand which a doctor who testified characterized as defensive type wounds. She had lost approximately half of the volume of her blood. Several of the wounds were from four to six inches deep. The medical examiner testified that in his opinion the butcher knife which was found at the scene of the crime and which was offered into evidence could have caused the wounds to Diane Parker.

The officers brought in searchlights to aid in the investigation, and once these lights were operating the defendant came out from behind some bushes, saying "I give up. Okay, I give up." There was blood smeared on his person, shirt, and pants. A blood analysis later showed that the blood on McDougall matched Diane Parker's blood type.

For two weeks during trial the defendant put on extensive evidence indicating that he suffered from a cocaine induced psychosis, as well as underlying depression and organic brain damage. This evidence showed that he had suffered severe and traumatic experiences as a child. For example, his grandfather committed suicide in his presence. Defendant's evidence indicated that he had injected nearly five grams of cocaine before he came to the Dunno residence. On the night of the arrest a sample of defendant's blood was taken; however, this blood was not analyzed until some nine or ten months after it had been obtained. Evidently the blood sample had become misplaced or overlooked and no one knew of its existence until some envelopes were being opened during the process of the trial. On defendant's motion the blood was sent to an expert selected by the defendant for the purpose of analysis, and upon an initial basic screening test, the analysis showed that the blood contained a residue of cocaine. However, upon a more sophisticated analysis of the blood the

results indicated that there were no signs of cocaine or its metabolites in the blood.

Defendant for some time suffered from amnesia concerning the events in question but eventually was able to provide his psychiatrist with sufficient information for the psychiatrist to testify that at the time defendant was stabbing Vicki Dunno and Diane Parker, he thought that he was fighting and stabbing his mother who was beating him with an automobile antenna. The defendant did not testify at trial.

Other evidence relevant to the decision will be discussed below.

## II.   GUILT OR INNOCENCE PHASE

The first issue in defendant's brief refers to the alleged denial of his constitutional rights by the trial judge's denial of his motion to continue the trial. Defendant's counsel at oral argument before this Court expressly waived this issue, stating that the issue was not one of substance and therefore was being waived.

### A.

[1] Defendant contends next that the trial court erred in denying his motion to suppress the evidence of the expert who analyzed defendant's blood for the purpose of determining whether it contained a residue of cocaine. This blood sample had been taken from the defendant shortly after he was arrested; however, it was not analyzed until during the trial, some nine to ten months after it had been obtained. There is no evidence to indicate, and indeed no contention is made by defendant, that the evidence was willfully concealed in bad faith by the district attorney. All of the evidence indicates that the blood sample was simply overlooked until it was inadvertently discovered during the trial upon the opening of some of the evidence envelopes. On defendant's motion he was allowed to select an expert for the purpose of analyzing the blood sample to determine if cocaine or a residue of cocaine was in the sample. This examination was done by an expert in Salt Lake City who was flown to Charlotte for the purpose of testifying at the trial. A voir dire was held on defendant's motion to suppress the testimony of the witness. Afterwards the court denied defendant's motion to suppress all of the testimony. The defendant did not object to this ruling, nor did he ask that he be

allowed a continuing objection to the questions asked in the presence of the jury. Rather, the defendant made individual objections to the testimony of the witness Peat during his examination. Defendant's counsel lodged some twelve objections during the direct examination of the witness Peat. The court passed upon the various objections as they were made in the presence of the jury. The following questions were asked in the presence of the jury of the witness Michael Peat, the examiner who was qualified as an expert in the field of chemistry and toxicology for the purpose of testifying in this case:

Q: Now you said the mass spectrometer would determine or show if there were cocaine or its metabolites in the sample that you tested. Is that correct?

A: That is correct.

Q: And in this particular instance of testing this blood sample, what results did you get on the mass spectrometer?

A: We did not detect cocaine or its metabolites in this blood sample.

The defendant did not object to this crucial testimony.

Generally, a defendant's failure to enter an appropriate and timely motion or objection results in a waiver of his right to assert the alleged error upon appeal. *E.g.*, N.C. Gen. Stat. § 15A-1446(b) (1978); *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976). However, in *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164 (1972), this Court held that where a voir dire was held by the court and thereafter the court ruled that the evidence sought to be excluded was admissible and the defendant excepted to the ruling, it was not necessary for the defendant to renew his objection upon the presentation of the testimony before the jury, although that would have been the better practice. Here, this principle is inapplicable because the defendant did not lodge an exception to the adverse ruling of the court upon his motion to suppress at the conclusion of the voir dire hearing. Nevertheless, in our discretion we have reviewed the testimony challenged by the defendant and find that it was competent and that the court did not commit error in admitting it.

Michael Peat, the witness, was qualified as an expert in the field of chemistry and toxicology for the purpose of testifying in this trial. He conducted two tests upon the defendant's blood sample which involved the use of accepted scientific procedures — radioimmunoassay, gas chromatography, and mass spectrometry. The witness was qualified to perform the tests in question, they were performed in accordance with scientifically approved procedures, and the procedures used were scientifically reliable. Therefore, the test results were properly admissible into evidence. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974), *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1207 (1976). Moreover, the initial screening test which was testified to before the jury showed a positive reaction for the presence of cocaine, which was favorable to the defendant. The second test failed to reveal the presence of cocaine or its metabolites in the blood sample. Mr. Peat also testified that once ingested, cocaine and its metabolites are quickly broken down and excreted from the human system. There was also before the jury the testimony of Dr. Peter Jatlow of the Yale University School of Medicine, who was a clinical pathologist. He was qualified as an expert in the analysis of blood and urine samples for the presence of various chemicals and has specialized in the study of such drugs as cocaine. He has also done extensive research on the breakdown of cocaine in the bloodstream. Dr. Jatlow's testimony corroborated the defendant's contention that defendant had ingested cocaine at the time in question. We find no prejudicial error in the court's admitting the testimony of the witness Michael Peat.

B.

[2] Defendant next contends that there was not sufficient evidence to support the finding of a felony upon which the jury could base its determination of guilt of felony murder in the first degree. Defendant also contends that the underlying felonies relied upon by the state are kidnapping and attempted rape and that because they were presented to the jury in the disjunctive, this raises a question of the unanimity of the verdict. The underlying felonies on the felony murder instructions were submitted in the disjunctive; however, a reading of the entire charge shows that Judge Ferrell clearly instructed the jury that its verdict must be unanimous as to every essential element of the of-

fenses charged. Early in its instructions the court charged the jury that "your answers must be unanimous as to each issue and sub-part thereof which you shall come to consider." Later in his instructions, after his final mandate, Judge Ferrell charged:

Again, I remind you that each of these charges and any lesser-included offense about which I have instructed you is a separate charge and you should consider them at all times as separate in your deliberations.

Finally, as to any verdict which you reach in each charge, your verdict, to be a verdict, must be unanimous.

There can be no question but that the jury fully understood that its verdict must be unanimous as to each element of the offenses which were submitted to it.

We conclude that the law as stated by Justice Carlton in *State v. Jordan*, 305 N.C. 274, 279, 287 S.E. 2d 827, 830-31 (1982), is equally applicable to the facts of this case:

Defendant also alleges error in the trial court's instructions on first degree burglary. He contends that by instructing the jury that defendant must have intended "to commit rape and/or first degree sexual offense" at the time of the breaking and entering, the trial court denied defendant his constitutional right to a unanimous jury verdict.

The North Carolina Constitution guarantees a criminal defendant the right to a unanimous verdict. N.C. Const. art. I, § 24; *accord, State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975). To convict a defendant, the jurors must unanimously agree that the State has proven beyond a reasonable doubt each and every essential element of the crime charged. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970). Defendant contends that the use of the disjunctive in describing the requisite intent for burglary created the possibility that less than all the jurors could agree which felony the defendant intended to commit although they might all agree that defendant did have the intent to commit one of the felonies and convict him of burglary.

While defendant's argument is not unreasonable, we are not persuaded. The trial court repeatedly instructed the jury

that its verdict must be unanimous. When the charge is read as a whole, as it must be, it is obvious that the trial court conveyed to the jury that the verdicts must be unanimous as to every essential element and that the instruction containing the disjunctive was a shorthand statement that the jurors must all find that defendant had the intent to commit rape or that they must all agree that defendant had the intent to commit a first degree sexual offense. While defendant is correct as to the technical meaning of the instruction, this Court must neither forget nor discount the common sense and understanding of the trial court and the jurors. From our examination of the charge we are satisfied that defendant was not deprived of his constitutional right to a unanimous jury verdict.

We find no prejudicial error in the court's instructions to the jury.

[3] Turning now to defendant's contention as to the insufficiency of the evidence, we find plenary evidence in the record to sustain both the charge of kidnapping Diane Parker and the charge of attempting to commit rape upon Diane Parker. Diane Parker was found on her back with her legs spread wide, her feet nearly up to her buttocks, knees raised and apart, and her nightgown drawn up to her upper chest, exposing her left breast. Many of the wounds were inflicted upon Diane Parker while she was in a prone position. An examination of Diane's nightgown indicated that it had been pulled up before some of the stab wounds were inflicted. When defendant crawled out of the bushes near Diane Parker's body, he had blood smeared upon his shirt and pants consistent with the blood type of Diane Parker. These facts support a reasonable inference that McDougall caught Diane Parker in the yard, knocked or threw her to the ground on her back, pulled her nightgown up over her chest, and parted her legs in an effort to rape her. She resisted and fought back, and McDougall stabbed her to death. The evidence is sufficient to survive a motion for nonsuit on the theory of murder during an attempted rape. *State v. Knight*, 248 N.C. 384, 103 S.E. 2d 452 (1958); *State v. Norman*, 14 N.C. App. 394, 188 S.E. 2d 667 (1972).

Moreover, the evidence is amply sufficient to find the defendant guilty of kidnapping Diane Parker and thus to support a ver-

dict of guilty of murder in the first degree upon that felony.
N.C.G.S. 14-39(a)(3) states that:

> (a) Any person who shall unlawfully confine, restrain, or
> remove from one place to another, any other person 16 years
> of age or over without the consent of such person, or any
> other person under the age of 16 years without the consent
> of a parent or legal custodian of such person, shall be guilty
> of kidnapping if such confinement, restraint or removal is for
> the purpose of:

> . . . .

> (3) Doing serious bodily harm to or terrorizing the
> person so confined, restrained or removed or any
> other person.

The evidence is clear that there was a removal and restraint of
Diane Parker which was more than an inherent inevitable part of
the commission of the murder. *State v. Irwin*, 304 N.C. 93, 282
S.E. 2d 439 (1981). The evidence shows that once McDougall
grabbed the butcher knife in Diane and Vicki's kitchen, he con-
tinuously confined, removed, or restrained the two women until
he crawled into the bushes after stabbing Diane to death. Clearly
defendant removed Diane from her home at knife point and
dragged her to an automobile in the driveway. There defendant
stated that he intended to put her and Vicki in the trunk of the
car and drive them to some undisclosed place. This removal was
not inherent in the felony of murder or attempted rape. It was
more than a technical asportation inherent in the commission of
another felony. *State v. Fulcher*, 34 N.C. App. 233, 237 S.E. 2d 909
(1977), *aff'd*, 294 N.C. 503, 243 S.E. 2d 338 (1978). When Vicki
threw the car keys to the ground, defendant threw her to the
ground and began stabbing her. The two women were terrorized.
Defendant prevented Diane from escaping from his control by
catching her as she began to run across the yard. Whereas Vicki
managed to lock herself in her house and call for help, Diane
never escaped from her kidnapper. After he caught Diane, defend-
ant stabbed her until she bled to death. The evidence thus sup-
ports a jury's finding that defendant was guilty of the felony of
kidnapping Diane and that he murdered her in the perpetration of
this felony.

State v. McDougall

While it is true that the jury found McDougall not guilty of the offense of kidnapping Vicki Dunno, this does not invalidate the finding that McDougall was guilty of kidnapping Diane Parker. Consistency of verdicts is not a necessity. A verdict of guilty on one count and not guilty on the other when the same act results in both offenses will not be disturbed. *State v. Davis*, 214 N.C. 787, 1 S.E. 2d 104 (1938); *State v. Rosser*, 54 N.C. App. 660, 284 S.E. 2d 130 (1981); 4 Strong's N.C. Index 3d Criminal Law § 124.5 (1976). The verdict of kidnapping Diane Parker was fully supported by the evidence and supports the verdict of guilty with respect to felony murder. We find no prejudicial error in the determination of the guilt of defendant of murder in the first degree.

## III.  SENTENCING HEARING

During the sentencing hearing the state proposed to offer evidence of a previous conviction of defendant for a felony involving the use or threat of violence. N.C. Gen. Stat. § 15A-2000(e)(3) (Cum. Supp. 1981). The prior conviction was on a charge of rape in the state of Georgia in 1974. Defendant opposed the use of the 1974 rape conviction and first argued that it was not a final conviction because defendant had filed a petition for writ of habeas corpus moving that the conviction be set aside. This petition was filed during the current trial. It was only after this motion to suppress the use of the Georgia rape conviction was denied that defendant stipulated the certified record of the conviction could be introduced. Defendant, however, never stipulated that the Georgia rape conviction involved the use or threatened use of violence to the person.

The state further offered the testimony of Mary Huff, the victim in the Georgia rape case, for the purpose of showing that the crime involved the use or threat of violence. After extensive argument, the court allowed this witness to testify. Mary Huff testified that in 1973 she lived next door to defendant's sister and that prior to her rape she had seen defendant but had never talked to him. About 4:00 a.m. on 21 November 1973, she wakened, turned on her light, and saw defendant standing in her bedroom doorway. She ordered defendant to leave and began to telephone the police when he refused. Defendant pulled out a butcher knife, held it to her face, and threatened to kill her and

her child unless she removed her nightgown. She complied, and defendant raped her upon her bed. Defendant threatened to kill her if she told his sister about the rape. After defendant left, Ms. Huff called the police. This testimony occupies seven pages of the transcript. Defendant cross-examined Mary Huff extensively, for eighteen pages of the transcript. Defendant attacked the credibility of the witness Huff and established that he was eighteen years of age at the time of the rape and had entered a plea of guilty to the charge.

During the sentencing hearing defendant also produced evidence from several expert witnesses concerning his emotional, mental, and psychological condition. McDougall testified in his own behalf, relating many experiences he had as a child, particularly those concerning his being beaten by his mother with pots, pans, golf clubs, and a car antenna. His grandfather committed suicide in McDougall's presence by shooting himself with a shotgun. McDougall's father was killed as the victim of an armed robbery.

McDougall testified that between dusk and midnight or one o'clock in the morning on the night of the crimes, he and a friend injected six grams of cocaine. He said his vision was fuzzy and he couldn't focus well as he drove home in the early morning hours. He parked outside his home in Blueberry Lane, but he didn't want to go inside because his arms were bleeding from the needle marks and he feared an argument with his wife. He decided to ask his neighbors for alcohol to clean his arms.

McDougall knocked on the door of the victims' house, said that he was "Lynda's husband from next door," and asked for alcohol. When Diane Parker asked if he wanted her to call a doctor, he said he didn't know why but he said yes. Someone opened the door and he went inside, where Diane Parker picked up the phone to call. At that point McDougall said he "lost everything," "could no longer think," and was "very, very scared." He picked up a knife he saw, grabbed the phone, and asked for car keys. He said the next thing he knew he was outside, and when he looked at Diane Parker, he saw his mother, who was hitting him with a car antenna. He said something happened inside him like an explosion in his chest, and he jumped at her and stabbed her. He saw her running, chased her, pulled her down, and started stab-

bing her again. He did that for a long time until he felt "the thing that had been inside" of him leaving. He stopped, sat on his knees, and couldn't hear or focus. He wanted to get away, but his legs wouldn't work, so he crawled under some nearby bushes. The next thing he knew there were many people around, including policemen. He thought they were after him for drugs so he came out and said, "I give up." The police questioned him about a woman who was dead, but he didn't remember what had happened and didn't believe them.

The jury found the following aggravating circumstances:

1. The defendant had previously been convicted of a felony involving the use of violence to the person. N.C. Gen. Stat. § 15A-2000(e)(3) (Cum. Supp. 1981).

2. The murder was especially heinous, atrocious, or cruel. N.C. Gen. Stat. § 15A-2000(e)(9).

3. The murder was part of a course of conduct by the defendant which included the commission by defendant of another crime of violence against another person. N.C. Gen. Stat. § 15A-2000(e)(11).

The jury found the following mitigating circumstances:

1. The murder was committed while defendant was under the influence of mental or emotional disturbance. N.C. Gen. Stat. § 15A-2000(f)(2).

2. Defendant's capacity to appreciate the criminality of his conduct or his capacity to conform his conduct to the requirements of the law was impaired. N.C. Gen. Stat. § 15A-2000(f)(6).

3. There are other circumstances arising from the evidence that have mitigating value. N.C. Gen. Stat. § 15A-2000(f)(9).

The jury then answered the following issues:

3. Do you find, beyond a reasonable doubt, that the mitigating circumstance or circumstances you have found is or are insufficient to outweigh the aggravating circumstance or circumstances you have found?

ANSWER: Yes.

4. Do you find beyond a reasonable doubt that the aggravating circumstance or circumstances you have found is or are sufficiently substantial to call for the imposition of the death penalty?

ANSWER: Yes.

Whereupon the jury recommended that defendant be sentenced to death, which sentence the court imposed.

A.

[4] Defendant first argues that by allowing Mary Huff to testify during the sentencing hearing the trial court committed prejudicial error. During the hearing the state sought to elicit testimony from Ms. Huff relevant to the following aggravating circumstance:

The defendant had been previously convicted of a felony involving the use or threat of violence to the person. N.C. Gen. Stat. § 15A-2000(e)(3) (Cum. Supp. 1981).

Defendant had been previously convicted of feloniously raping Ms. Huff and feloniously burglarizing her home. Before Ms. Huff took the stand, the state contended at the bench that the facts of these prior convictions showed that each was a felony involving the use or threat of violence to the person. Defendant responded by arguing that under N.C.G.S. 15A-2000(e)(3) the phrase "felony involving the use or threat of violence to the person" must be limited to a felony in which the use or threat of violence to the person was an element of the offense. Defendant contended that a prior felony conviction cannot be used as an aggravating circumstance unless the use or threat of violence to the person is an element of the offense, even though the facts show that the commission of the offense did involve the use or threat of violence to the person. Because the use or threat of violence to the person was not an element of the offense of burglary, the defendant argued that burglary is not a felony within the meaning of N.C.G.S. 15A-2000(e)(3). Therefore, defendant argued, evidence of the burglary was not admissible during the sentencing hearing for the purpose of establishing the aggravating circumstance listed in N.C.G.S. 15A-2000(e)(3).

The trial court resolved this question in favor of defendant. Although the state did not except to this ruling, we have exam-

ined the issue in our discretion because it is likely to arise again. We find the trial court's ruling to have been erroneous. The statute does not state that the jury may only consider as an aggravating circumstance those felonies in which the use or threat of violence to the person is an element of the offense. The statute contains the word "involving," which indicates an interpretation much more expansive than one restricting the jury to consider only felonies having the use or threat of violence to the person as an element. Crimes that do not have violence as an element may be committed by the use or threat of violence. By using "involving" instead of language delimiting consideration to the narrow class of felonies in which violence is an element of the offense, we find the legislature intended the prior felony in N.C.G.S. 15A-2000 (e)(3) to include any felony whose commission involved the use or threat of violence to the person. Thus we hold that for purposes of N.C.G.S. 15A-2000(e)(3), a prior felony can be either one which has as an element the involvement of the use or threat of violence to the person, such as rape or armed robbery, *State v. Hamlette,* 302 N.C. 490, 276 S.E. 2d 338 (1981), or a felony which does not have the use or threat of violence to the person as an element, but the use or threat of violence to the person was involved in its commission.[1]

Defendant's objection before this Court concerns Mary Huff's testimony regarding defendant's prior conviction for raping her. We note that rape is a felony which has as an element the "use or threat of violence to the person." N.C.G.S. 14-27.2 reads in part as follows:

---

1. For example, a defendant could commit armed robbery, yet, for reasons satisfactory to the district attorney, only be charged with felonious larceny. A conviction of the larceny charge could be an aggravating circumstance if the state at the sentencing hearing proved that its commission involved the use or threatened use of violence to the person. The testimony of witnesses would be proper to prove or rebut the involvement of violence. Likewise, a defendant could be convicted of rape in the second degree by engaging in vaginal intercourse with a victim who is mentally defective. N.C. Gen. Stat. § 14-27.3(a)(2) (1981). Violence is not an element of the offense. If the use or threat of violence to the person was involved, this could be shown by witnesses to establish the conviction as an aggravating circumstance. Forgery, N.C.G.S. 14-119 (1981), a nonviolent crime, may be committed by a defendant who forces another at gunpoint to forge a signature on a check.

§ 14-27.2. First degree rape.

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

> . . . .

> > (2) With another person by force and against the will of the other person, and:

> > > a. Employs or displays a dangerous or deadly weapon . . . .

Defendant was convicted of raping Ms. Huff in Georgia, where the same general principle applies: "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will . . . ." Ga. Code Ann. § 16-6-1(a) (1982).

Defendant stipulated to the admissibility of the certified record of his prior conviction of the felony of rape. When the state sought to introduce testimony of Ms. Huff concerning the rape, defendant objected on grounds that his stipulation foreclosed the state from offering testimony to establish the prior conviction and the fact that it involved the use or threat of violence to the person.[2] The trial court ruled that Ms. Huff could testify during the sentencing hearing concerning the prior rape. When she took the stand, she stated that McDougall had raped her at knife point, threatening to kill her and her young daughter.

Defendant states that as a result of allowing the testimony of Mary Huff concerning the prior rape conviction, the sentencing hearing turned into a "mini-trial" of the prior offense.[3] He relies upon *State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981). At the outset we note that this case was tried at the 9 June 1980 session of superior court in Mecklenburg County and that *Silhan* was not decided until 4 March 1981. Therefore Judge Ferrell did not

---

2. Although defendant argued that the felony of rape in Georgia involved the use or threat of violence as a matter of law, he did not so stipulate with respect to this prior conviction.

3. If this aspect of the hearing did become a "raucous mini-trial," it was due largely to the efforts of defendant's counsel, Jerry Paul, during his free-swinging, wide-ranging cross-examination of Ms. Huff. Defendant cannot be heard now to complain about the results of his own overzealous actions.

have the benefit of *Silhan*. Moreover we do not find that *Silhan* supports defendant's argument. In *Silhan* we find:

> We note in this regard that the most appropriate way to show the "prior felony" aggravating circumstance would be to offer duly authenticated court records. Testimony of the victims themselves should not ordinarily be offered *unless such testimony is necessary to show that the crime for which defendant was convicted involved the use or threat of violence to the person.* There should be no "mini-Trial" at the sentencing hearing on the questions of whether the prior felony occurred, the circumstances and details surrounding it, and who was the perpetrator. Whether a defendant has, in fact, been convicted of a prior felony involving the use or threat of violence to a person would seem to be a fact which ordinarily is beyond dispute. It should be a matter of public record. If, of course, defendant denies that he was the defendant shown on the conviction record, the occurrence of the conviction, or that the crime involved the use or threat of violence to the person, then the state should be permitted to offer such evidence as it has to overcome defendant's denials.

302 N.C. at 272, 275 S.E. 2d at 484 (emphasis added).

The above statement by this Court in *Silhan* may properly be referred to as obiter dictum. In *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981) (decided eight months after *Silhan*), this Court was faced directly with the question whether the state could introduce evidence concerning a prior murder when the defendant had stipulated that he had been found guilty of the charge. This Court found no error in allowing such testimony.

> The objection made by defendant is that, as he had stipulated the fact of his prior conviction, the State should not have been allowed to introduce testimony concerning the murder. The State argues that when proving as an aggravating circumstance that defendant was previously convicted of a capital felony or of a felony involving the use or threat of violence to the person (G.S. 15A-2000(e)(2) and (3)), the State should not be limited to admission of the court record of conviction.
>
> We think the better rule here is to allow both sides to introduce evidence in support of aggravating and mitigating

State v. McDougall

circumstances which have been admitted into evidence by stipulation. If the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed. Conversely, it could be to defendant's advantage that he be allowed to offer additional evidence in support of possible mitigating circumstances, instead of being bound by the State's stipulation.

In *Elledge v. State*, 346 So. 2d 998 (Fla. 1977), the Supreme Court of Florida addressed the same question. There, as here, appellant's counsel stipulated to the admissibility of a prior conviction of defendant for murder. At the sentencing hearing, the widow of the victim was nonetheless allowed to testify in detail about events surrounding the crime. In deeming the testimony properly admitted, the court said:

> This is so because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge. It is matter that can contribute to decisions as to sentence which will lead to uniform treatment and help eliminate 'total arbitrariness and capriciousness in [the] imposition' of the death penalty. (Citation omitted.)

*Id.* at 1001.

304 N.C. at 279-80, 283 S.E. 2d at 780-81.[4]

In *Taylor* the prior felony, murder, involved violence as an element of the offense. The holding in *Taylor* is in accord with the general rule that every circumstance calculated to throw light upon the alleged crime is admissible. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied*, 384 U.S. 1020 (1966).

---

4. Although Justice Exum, the author of *Silhan*, dissented in part in *Taylor*, he did not dissent from this holding of the Court.

State v. McDougall

The trial judge has ample authority to control the state's presentation of evidence in proving that the prior felony involved the use or threat of violence to the person. It is the duty of the trial judge to supervise and control the trial to prevent injustice to either party. *Greer v. Whittington*, 251 N.C. 630, 111 S.E. 2d 912 (1960). The court has the power and duty to control the examination and cross-examination of the witnesses. *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973); *Greer, supra*. The trial judge may ban unduly repetitious and argumentative questions as well as inquiry into matters of tenuous relevance. *State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980); *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied*, 414 U.S. 874 (1973). The extent of cross-examination with respect to collateral matters is largely within the discretion of the trial judge. *State v. McLean*, 294 N.C. 623, 242 S.E. 2d 814 (1978); *Ingle v. Transfer Corp.*, 271 N.C. 276, 156 S.E. 2d 265 (1967). The proper exercise of this authority will prevent the determination of this aggravating circumstance from becoming a "mini-trial" of the previous charge.

Defendant here argues that the state should be limited to introducing the authenticated record of the conviction to prove a prior felony involving the use or threat of violence to the person. Only if defendant then challenges the involvement of the use or threat of violence to the person with respect to the offense would the state be allowed to rebut this contention by the use of witnesses. This argument overlooks the state's duty to prove each aggravating circumstance beyond a reasonable doubt. N.C. Gen. Stat. § 15A-2000(c)(1) (Cum. Supp. 1981). Although the introduction of the record of the prior conviction establishes a prima facie case where the prior felony has the use or threat of violence as an element and could support a peremptory instruction, it is not conclusive upon the jury. Where violence is not an element of the felonious offense, the introduction of the record of conviction would not create a prima facie case. In either event, the state cannot be deprived of an opportunity to carry its burden of proof by the use of competent, relevant evidence.

We find the rule in *Taylor* to be dispositive with respect to this question, and we hold that the involvement of the use or threat of violence to the person in the commission of the prior felony may be proven or rebutted by the testimony of witnesses and that the state may initiate the introduction of this evidence

notwithstanding defendant's stipulation of the record of conviction.

This ruling is consistent with the opinions of the United States Supreme Court. In *Lockett v. Ohio*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978), we find:

> And where sentencing discretion is granted, it generally has been agreed that the sentencing judge's "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—*if not essential*—[to the] selection of an appropriate sentence . . . ." *Williams v. New York*, supra [337 U.S.], at 247 [93 L.Ed. 1337, 69 S.Ct. 1079] (emphasis added).

*Id.* at 602-03, 57 L.Ed. 2d at 988-89.

> The plurality concluded, in the course of invalidating North Carolina's mandatory death penalty statute, that the sentencing process must permit consideration of the "character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S., at 304 [49 L.Ed. 2d 944, 96 S.Ct. 2978] in order to ensure the reliability, under Eighth Amendment standards, of the determination that "death is the appropriate punishment in a specific case."

*Id.* at 601, 57 L.Ed. 2d at 988 (citations omitted).

> "in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death."

*Id.* at 604, 57 L.Ed. 2d at 989 (quoting *Woodson v. North Carolina*, 428 U.S. at 304, 49 L.Ed. 2d at 961).

While *Lockett* dealt with an Ohio statute that limited the mitigating circumstances available to a defendant, its reasoning applies equally to the prosecution. In order to prevent an arbitrary or erratic imposition of the death penalty, the state must be allowed to present, by competent relevant evidence, any

aspect of a defendant's character or record and any of the circumstances of the offense that will substantially support the imposition of the death penalty. N.C. Gen. Stat. § 15A-2000(b)(3) (Cum. Supp. 1981).

The assignment of error is without merit.

### B.

[5] Defendant next argues that the trial court erred in failing to submit to the jury in writing all possible mitigating circumstances on the verdict sheet. We reject this argument and find no prejudicial error in this regard.

This Court in *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622 (1982), outlined the instructive guidelines established by this Court for the trial judges of our state to follow in the submission of mitigating circumstances. We commend them to the bench and bar. Defendant's assignment of error is governed by the rules in *State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (1979). There it was held that if "a defendant makes a timely request for a listing *in writing* of possible mitigating circumstances . . . the trial judge must put such circumstances on the written list." *Id.* at 72, 257 S.E. 2d at 617 (emphasis added). Absent a request to include possible mitigating circumstances on the written verdict form, the failure of the trial judge to so do is not error. *Id.*

Here defendant moved that the court submit to the jury three statutory mitigating circumstances, N.C.G.S. 15A-2000(f), and twelve additional mitigating circumstances, N.C.G.S. 15A-2000(f)(9). The court placed the three statutory circumstances on the verdict sheet. The additional circumstances were not placed on the verdict sheet. However, the following question was submitted to the jury on the verdict sheet: "Is there any other circumstance or circumstances arising from the evidence which you deem to have mitigating value?" The judge charged the jury on ten of the twelve mitigating circumstances requested under N.C.G.S. 15A-2000(f)(9). The jury answered this issue "yes."

Defendant failed to request, as required by *Johnson*, that the mitigating circumstances be listed on the written verdict form. The fact that the trial judge in his discretion listed the statutory mitigating circumstances on the verdict form does not make it er-

ror for him to fail to list the additional circumstances. *See also State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied*, 455 U.S. 1038, 72 L.Ed. 2d 155 (1982) (there are no statutory or constitutional requirements of specific findings on the mitigating circumstances submitted to the jury).

We again repeat that it would be the better practice to include on the verdict form all mitigating circumstances that are to be submitted to the jury. *Id.* In so doing, however, the trial court must also submit the question of whether there exists "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value." N.C. Gen. Stat. § 15A-2000(f)(9) (Cum. Supp. 1981). Otherwise, jurors may feel they are prohibited from considering additional mitigating circumstances not listed on the verdict sheet. Failure to submit this question could violate the constitutional principles enunciated in *Lockett v. Ohio, supra*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978).

[6] In addressing this assignment of error, defendant urges that the trial court erred in the following instruction: "The law of North Carolina specifies the mitigating circumstances which might be considered by you, and only those circumstances created by statute, about which I shall instruct you, may be considered by you."

Standing alone this instruction is arguably erroneous unless the phrase "only those circumstances created by statute" is interpreted to include mitigating circumstances arising under N.C.G.S. 15A-2000(f)(9). Certainly this is a logical interpretation of the phrase, and we adopt it. Moreover, when we examine the court's charge in its entirety, as we are required to do, no error appears. *State v. Silhan, supra*, 302 N.C. 223, 275 S.E. 2d 450 (1981); *State v. Tomblin*, 276 N.C. 273, 171 S.E. 2d 901 (1970); *State v. Hall*, 267 N.C. 90, 147 S.E. 2d 548 (1966). The court, after giving the quoted instruction, specifically charged the jury as to each mitigating circumstance relied upon by defendant. This included three mitigating circumstances specifically listed in the statute and ten circumstances under N.C.G.S. 15A-2000(f)(9). In this respect the court charged:

> [Y]ou may consider any circumstance from the evidence which you are satisfied lessens the seriousness of the murder or suggests a lesser penalty than otherwise may be required,

such as the defendant's character, education, environment, habits, mentality, propensities and record, and any other circumstances arising from the evidence which you deem to have mitigating value. . . . [The judge listed ten mitigating circumstances.]

So then, if you find from the evidence any one or more of the mitigating circumstances specifically enumerated in the preceding paragraph or any other mitigating circumstance arising from the evidence which you deem to have mitigating value, then it would be your duty to answer this sub-part (d) "Yes." Otherwise, "No."

So then, Members of the Jury, as to this second issue I instruct you that if you find one or more of the mitigating circumstances from the evidence, it would be your duty to answer the issue "Yes," . . . .

The trial court repeatedly instructed that the jury could find *any* mitigating circumstance supported by the evidence. We find no prejudicial error in the challenged instruction.

## C.

[7] Defendant argues that the trial court erred in charging that if the jury found that: (1) one or more aggravating circumstances existed, and (2) that mitigating circumstances found by it were insufficient to outweigh the aggravating circumstances, and (3) the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty, it had a *duty* to recommend a sentence of execution. Defendant contends that even though the jury answers the issues in the manner required in order to impose the death sentence, it could still exercise its discretion and recommend a sentence of life imprisonment. This question has been resolved by this Court contrary to defendant's contention in *State v. Pinch, supra,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622 (1982); *State v. Williams,* 305 N.C. 656, 292 S.E. 2d 243, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622 (1982); and *State v. Smith,* 305 N.C. 691, 292 S.E. 2d 264, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622 (1982). Defendant requests us to reconsider these holdings. We decline to do so and reaffirm these decisions with respect to this issue. This assignment of error is meritless.

## D.

[8] Defendant argues that the form of and instructions on the fourth issue submitted to the jury were erroneous. The issue reads:

> 4. Do you find beyond a reasonable doubt that the aggravating circumstance or circumstances you have found is or are sufficiently substantial to call for the imposition of the death penalty?

> ANSWER: Yes.

This issue involves the requirement that in making the ultimate decision between life and death, the jury must consider any aggravating circumstances found along with any mitigating circumstances. The totality of the mitigating and aggravating circumstances must be considered by the jury in arriving at this decision. We review the court's instructions in their entirety in addressing this issue.

The court instructed the jury *inter alia*:

> It is now your duty to recommend to the Court whether the defendant will be sentenced to death or life imprisonment. Your recommendation will be binding upon the Court. If you unanimously recommend that the defendant be sentenced to death, the Court will be required to impose a sentence of death.

> .   .   .   .   .

> A mitigating circumstance is that circumstance arising from the evidence which does not constitute a justification or excuse for a killing, or which reduces it to a lesser degree of crime than first-degree murder, but which nevertheless may be considered as extenuating or reducing the moral culpability of the killing, or which makes it less deserving of extreme punishment than other first-degree murders. . . .

> The defendant has the burden of persuading you of the existence of any mitigating circumstance. The defendant must satisfy you from the evidence taken as a whole, not beyond a reasonable doubt, but merely to your satisfaction, of the existence of any mitigating circumstance.

.   .   .   .   .

[Y]ou may consider any circumstance from the evidence which you are satisfied lessens the seriousness of the murder or suggests a lesser penalty than otherwise may be required, such as the defendant's character, education, environment, habits, mentality, propensities and record, and any other circumstances arising from the evidence which you deem to have mitigating value. . . .

.   .   .   .   .

So then, if you find from the evidence any one or more of the mitigating circumstances specifically enumerated in the preceding paragraph or any other mitigating circumstance arising from the evidence which you deem to have mitigating value, then it would be your duty to answer this sub-part (d) "Yes." Otherwise, "No."

So then, Members of the Jury, as to this second issue I instruct you that if you find one or more of the mitigating circumstances from the evidence, it would be your duty to answer the issue "Yes". . . .

.   .   .   .   .

The third issue for your consideration reads as follows:

3. Do you find, beyond a reasonable doubt, that the mitigating circumstance or circumstances you have found is or are insufficient to outweigh the aggravating circumstance or circumstances you have found?

On this issue the burden is upon the State to prove to you from the evidence beyond a reasonable doubt that the mitigating circumstances you find are insufficient to outweigh any aggravating circumstances you may have found.

If you find from the evidence one or more mitigating circumstances, you must weigh the aggravating circumstances against the mitigating circumstances. In so doing, you are the sole judges of the weight to be given to any individual circumstance which you find, whether aggravating or mitigating. Your weighing should not consist of merely adding up

the number of aggravating circumstances and mitigating circumstances. Rather, you must decide from all the evidence what value to give to each circumstance, and then weigh the aggravating circumstances, so valued, against the mitigating circumstances, so valued, and finally determine whether the aggravating circumstances outweigh the mitigating circumstances.

So then, Members of the Jury, if the State has proven to you from the evidence beyond a reasonable doubt that the mitigating circumstances you find are insufficient to—that is, do not—outweigh the aggravating circumstances you find, it would then be your duty to answer this third issue "Yes." However, if you do not so find, or if you have a reasonable doubt, then it would be your duty to answer this issue "No."

. . . . .

On this [Fourth] issue the burden is on the State to prove to you from the evidence beyond a reasonable doubt that the aggravating circumstances found, if any, are sufficiently substantial to call for the imposition of the death penalty.

Substantial means having substance or weight, important, significant or momentous. Aggravating circumstances may exist in a particular case and still not be sufficiently substantial to call for the death penalty. Therefore, it is not enough for the State to prove from the evidence beyond a reasonable doubt the existence of one or more aggravating circumstances. It must also prove beyond a reasonable doubt that such aggravating circumstances are sufficiently substantial to call for the death penalty, and before you may answer "Yes," you must agree unanimously that they are.

If you unanimously find beyond a reasonable doubt that any aggravating circumstance or circumstances found by you are sufficiently substantial to call for the death penalty, you would answer this issue "Yes." If you do not so find, or have a reasonable doubt, then you would answer this issue "No."

If you answer this issue "No," it would be your duty to recommend that the defendant be imprisoned for life.

So then, Members of the Jury, finally I instruct you for you to recommend that the defendant be sentenced to death, the State must prove three things beyond a reasonable doubt, as I have defined that term, from the evidence:

FIRST, that one or more statutory aggravating circumstances existed; and,

SECOND, that the mitigating circumstances found by you are insufficient to outweigh the aggravating circumstances, if any, found by you; and,

THIRD, that the aggravating circumstances, if any, found by you are sufficiently substantial to call for the imposition of the death penalty.

. . . .

. . . If the State has proven these three things to you beyond a reasonable doubt, and you unanimously so find, it would be your duty to recommend that the defendant be sentenced to death. If you do not so find, or if you have a reasonable doubt to one or more of these things, it would be your duty to recommend that the defendant be sentenced to life imprisonment.

Defendant contends that the form of the issue and the jury instructions allowed the jury to answer the issue "yes" without any consideration of the mitigating circumstances found by the jury.

The issues submitted are based upon the following portions of the statute:

After hearing the evidence, argument of counsel, and instructions of the court, the jury shall deliberate and render a sentence recommendation to the court, based upon the following matters:

(1) Whether any sufficient aggravating circumstance or circumstances as enumerated in subsection (e) exist;

(2) Whether any sufficient mitigating circumstance or circumstances as enumerated in subsection (f), which outweigh the aggravating circumstance or circumstances found, exist; and

(3) Based on these considerations, whether the defendant should be sentenced to death or to imprisonment in the State's prison for life.

. . . .

(c) Findings in Support of Sentence of Death.—When the jury recommends a sentence of death, the foreman of the jury shall sign a writing on behalf of the jury which writing shall show:

(1) The statutory aggravating circumstance or circumstances which the jury finds beyond a reasonable doubt; and

(2) That the statutory aggravating circumstance or circumstances found by the jury are sufficiently substantial to call for the imposition of the death penalty; and,

(3) That the mitigating circumstance or circumstances are insufficient to outweigh the aggravating circumstance or circumstances found.

N.C. Gen. Stat. § 15A-2000(b), (c) (Cum. Supp. 1981).

The fourth issue is not an isolated, independent question that may be answered without reference to the other issues and circumstances of the case. This is manifested by the language of the General Assembly—"[b]ased on these considerations" should the defendant be sentenced to death or life imprisonment. N.C. Gen. Stat. § 15A-2000(b)(3) (Cum. Supp. 1981). In deciding the fourth issue, the jury must consider the aggravating circumstances found, the mitigating circumstances found, and the degree to which the aggravating circumstances outweigh the mitigating circumstances. The jury must compare the totality of the aggravating circumstances with the totality of the mitigating circumstances and be satisfied beyond a reasonable doubt that the statutory aggravating circumstances found are sufficiently substantial to call for the imposition of the death penalty and that the death penalty is justified and appropriate.

When the charge is considered contextually, as we have done, no prejudicial error appears. *State v. Tomblin*, 276 N.C. 273, 171 S.E. 2d 901 (1970). Although not a model charge, the jury was

State v. McDougall

adequately instructed that before recommending the death sentence it must be satisfied that the sentence is justified and appropriate upon considering the totality of the aggravating circumstances with the totality of the mitigating circumstances found by the jury. The charge and the sentencing procedure satisfied the requirements of N.C.G.S. 15A-2000 and the holding in *Lockett v. Ohio, supra*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978), that the death penalty should not be imposed where the sentencer may be prevented from considering all mitigating circumstances in making the ultimate life or death determination.

The jury is not required to assign a value to the aggravating circumstances, subtract from it the value of the mitigating circumstances, and then look to the remainder to determine if that value is sufficiently substantial to deserve the death penalty. We reject and disapprove such a mechanical mathematical approach to the decision of life or death.

The instructions given in this case are substantially the same as those approved by this Court in *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. den.*, --- U.S. ---, 74 L.Ed. 2d 642 (1982); *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. den.*, --- U.S. ---, 74 L.Ed. 2d 622 (1982); *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. den.*, --- U.S. ---, 74 L.Ed. 2d 622 (1982); *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. den.*, 455 U.S. 1038, 72 L.Ed. 2d 155 (1982); *State v. Martin*, 303 N.C. 246, 278 S.E. 2d 214, *cert. den.*, 454 U.S. 933, 70 L.Ed. 2d 240 (1981); *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. den.*, 448 U.S. 907, 65 L.Ed. 2d 1137 (1980).

As stated earlier, although the instructions are free from prejudicial error, they are not a model charge. The form of the fourth issue can also be more appropriately framed. We therefore urge the bench and bar to carefully consider the following with respect to this question.

[9] We note that the order and form of the issues in capital trials have varied from case to case. The order and form of the issues to be submitted to the jury should be substantially as follows:

(1) Do you find from the evidence beyond a reasonable doubt the existence of one or more of the following aggravating circumstances?

(2) Do you find from the evidence the existence of one or more of the following mitigating circumstances?

(3) Do you find beyond a reasonable doubt that the mitigating circumstance or circumstances you have found is, or are, insufficient to outweigh the aggravating circumstance or circumstances you have found?

(4) Do you find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?

With respect to the fourth issue we find the following statement by the Utah Supreme Court in *State v. Wood*, 648 P. 2d 71, 83 (Utah), *cert. den.*, --- U.S. ---, 74 L.Ed. 2d 383 (1982), quoted by the United States Supreme Court in *Smith v. North Carolina*, --- U.S. ---, 74 L.Ed. 2d 622 (1982), to be instructive:

It is our conclusion that the appropriate standard to be followed by the sentencing authority — judge or jury — in a capital case is the following:

"After considering the totality of the aggravating and mitigating circumstances, you must be persuaded beyond a reasonable doubt that total aggravation outweighs total mitigation, and you must further be persuaded, beyond a reasonable doubt, that the imposition of the death penalty is justified and appropriate in the circumstances."

These standards require that the sentencing body compare the totality of the mitigating against the totality of the aggravating factors, not in terms of the relative numbers of the aggravating and the mitigating factors, but in terms of their respective substantiality and persuasiveness. Basically, what the sentencing authority must decide is how compelling or persuasive the totality of the mitigating factors are when compared against the totality of the aggravating factors. The sentencing body, in making the judgment that aggravating factors "outweigh," or are more compelling than, the mitigating factors, must have no reasonable doubt as to that conclusion, and as to the additional conclusion that the death

penalty is justified and appropriate after considering all the circumstances.

The sentencing procedure in each capital case must assure reliability in the decision that death is the proper punishment. *Lockett v. Ohio, supra*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978). Appropriate instructions on the fourth issue should be given to the jury substantially as follows:

"In deciding this issue, you are not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances found by you. After considering the totality of the aggravating and mitigating circumstances, you must be convinced beyond a reasonable doubt that the imposition of the death penalty is justified and appropriate in this case before you can answer the issue 'yes.' In so doing, you are not applying a mathematical formula. For example, three circumstances of one kind do not automatically and of necessity outweigh one circumstance of another kind. The number of circumstances found is only one consideration in determining which circumstances outweigh others. The jury may very properly emphasize one circumstance more than another in a particular case.[5] You must consider the relative substantiality and persuasiveness of the existing aggravating and mitigating circumstances in making this determination. You, the jury, must determine how compelling and persuasive the totality of the aggravating circumstances are when compared with the totality of the mitigating circumstances found by you.[6] After so doing, if you are satisfied beyond a reasonable doubt that the aggravating circumstances found by you are sufficiently substantial to call for the death penalty, it would be your duty to answer the issue 'yes.' If you are not so satisfied or have a reasonable doubt, it would be your duty to answer the issue 'no.' "[7]

5. *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983); *State v. Davis*, 58 N.C. App. 330, 293 S.E. 2d 658, *disc. rev. denied*, 306 N.C. 745 (1982).

6. *Smith v. North Carolina*, --- U.S. ---, 74 L.Ed. 2d 622 (1982).

7. *Cf. State v. Smith*, 305 N.C. 691, 292 S.E. 2d 264, *cert. den.*, --- U.S. ---, 74 L.Ed. 2d 622 (1982).

Bench and bar should note that the foregoing is not intended to be a complete charge on this issue.[8]

We find no prejudicial error in the sentencing phase of defendant's trial.

## IV.

Finally, we turn to the duties required of this Court in every capital case in which a sentence of death has been imposed. We are directed by N.C.G.S. 15A-2000(d)(2), (Cum. Supp. 1981) to determine:

(1) Whether the record supports the jury's findings of any aggravating circumstance or circumstances upon which the sentencing court based its sentence of death;

(2) Whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We have thoroughly reviewed the transcript, record on appeal, briefs of the defendant and the State, as well as the recorded oral arguments of counsel before this Court. After so doing, we find that the record fully supports the aggravating circumstances found by the jury. We hold that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor. There is no indication in the transcript or record that any impermissible factor influenced the imposition of the death sentence.

[10] We must next determine whether the sentence in this case is excessive or disproportionate to the penalty imposed in similar cases. In our opinion in *State v. Douglas Williams, Jr.* (No.

---

8. In the event the jury fails to find the existence of any mitigating circumstances, the jury must still answer the fourth issue. In such case, the jury must determine whether the aggravating circumstances found by the jury are of such value, weight, importance, consequence, or significance as to be sufficiently substantial to call for the imposition of the death penalty. Substantial circumstances may be contrasted with circumstances that are tenuous, flimsy, abstract, imaginary, deceptive, or negligible.

277A82, Edgecombe County, filed 5 April 1983), this Court set forth the pool of cases to be considered in proportionality review of sentences in capital cases. *Williams* also states the method of such review. The pool of cases for a proportionality review is composed of all capital cases tried after the effective date of our capital punishment statute, 1 June 1977, in which there were convictions of murder in the first degree, regardless of the sentences imposed, and which have been reviewed on appeal by this Court. In making this review, this Court will rely upon its own case reports of the pool of cases, together with the transcript, record and briefs when necessary. *See, Williams, supra.*

[11] Upon review of the transcript, record, briefs and recorded oral arguments, we do not find the death sentence in this case disproportionate when compared with the pool of similar cases. In carrying out this review we have considered both the crime and the defendant. N.C. Gen. Stat. § 15A-2000(d)(2), (Cum. Supp. 1981). In so doing, we have complied with the constitutional requirement that individualized consideration be given to the defendant before the death sentence can be upheld. *Lockett v. Ohio, supra,* 438 U.S. 586, 57 L.Ed. 2d 973 (1978). In considering the defendant, we note that the jury found as statutory mitigating circumstances that defendant was under the influence of mental or emotional disturbance when he committed the murder, and that the defendant's capacity to appreciate the criminality of his conduct or to conform to the requirements of law was impaired. N.C. Gen. Stat. § 15A-2000(f)(2) and (6). While these findings are often persuasive on the jury in recommending life imprisonment,[9] they are not conclusive.[10] It is also apparent from the transcript and record that, although there is evidence to the contrary, these mitigating circumstances may have resulted from the defendant's voluntary injections of cocaine. The trial court instructed the jury that defendant could be under a mental or emotional disturbance as a

9. *See State v. Adcox,* 303 N.C. 133, 277 S.E. 2d 398 (1981); *State v. King,* 301 N.C. 186, 270 S.E. 2d 98 (1980); *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Ferdinando,* 298 N.C. 737, 260 S.E. 2d 423 (1979); *State v. Taylor,* 298 N.C. 405, 259 S.E. 2d 502 (1979); *State v. Poole,* 298 N.C. 254, 258 S.E. 2d 339 (1979); *State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979).

10. *State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. den.,* 455 U.S. 1038, 72 L.Ed. 2d 155 (1982); *State v. Hutchins,* 303 N.C. 321, 279 S.E. 2d 788 (1981); *State v. Johnson,* 298 N.C. 47, 257 S.E. 2d 597 (1979).

result of the "consumption of drugs." Likewise, with respect to impaired capacity, the jury was instructed that this condition could be caused by "drug intoxication." In this case, although finding the existence of these two mitigating circumstances, the jury could have reasonably given them less weight in making the ultimate decision of life or death than did the juries in the cases cited in footnote 9.

The jury found the existence of three aggravating circumstances: defendant had been previously convicted of a felony involving the use of violence to the person, the murder was especially heinous, atrocious or cruel, and the murder was part of a course of conduct which included a crime of violence by defendant against another person, Vicki Dunno. N.C. Gen. Stat. § 15A-2000(e)(3), (9) and (11) (Cum. Supp. 1981). Two of these aggravating circumstances could not have been caused or influenced in any way by defendant's emotional state or diminished capacity. The transcript and record do not support the theory that this murder was the product of defendant's unfortunate childhood or a deficient personality exacerbated by the voluntary injection of cocaine.

After voluntarily injecting cocaine, defendant gained entry into the home of Diane Parker and Vicki Dunno by cunning, guile and misrepresentation. Once in their home, he commenced a campaign of terror against the two young women, cutting, stabbing and slashing them with a butcher knife. There is strong evidence that defendant killed Diane Parker while attempting to rape her. There is no reason to repeat here the gory details of the crime.

No duty of this Court is more serious or important than the review of a sentence of death. With this in mind, our careful comparison of this crime and this defendant with similar cases leads us to the conclusion that the death sentence imposed upon this defendant is not disproportionate or excessive. We find nothing in our review that would justify treating this defendant differently from those defendants who were given death sentences which this Court has upheld since 1 June 1977. Nor does our review of the life sentence cases in the pool of similar cases lead us to the conclusion that defendant should receive a life sentence. Our review discloses a meaningful basis for distinguishing this case from those in which life sentences were imposed. *Lockett v. Ohio,*

*supra*, 438 U.S. 586, 57 L.Ed. 2d 973 (1978); *Harris v. Pulley*, 692 F. 2d 1189 (9th Cir. 1982), *cert. granted*, 43 C.C.H. S.Ct. Bull. B1442 (21 March 1983). We do not find the death sentence in this case to be inappropriate as a matter of law. We decline to exercise our discretion to set aside the death sentence imposed.

Defendant was also convicted of assault on Vicki Dunno with a deadly weapon with intent to kill inflicting serious injury, and kidnapping of Diane Parker. Although he gave notice of appeal of these convictions, defendant does not bring forward any assignments of error or make any argument with respect to these charges in his brief. We find no error in these convictions.

The result is:

No. 79CRS47734—assault with a deadly weapon with intent to kill inflicting serious injury—no error.

No. 79CRS67081—kidnapping—no error.

No. 79CRS47697—murder in the first degree—no error in guilt determination; no error in the sentencing phase.

Justice FRYE took no part in the consideration or decision of this case.

Justice EXUM dissenting as to sentence.

I concur fully in the majority's treatment of the guilt phase of this case. With respect to the sentencing phase I dissent and vote to remand for a new sentencing hearing.

A.

In my view the trial court failed to exercise sufficient control over the direct examination and cross-examination of the witness Mary Huff so that her testimony resulted in a "mini-trial" of the Georgia rape case, a phenomenon which we sought to warn against in *State v. Silhan*, 302 N.C. 223, 273, 275 S.E. 2d 450, 484 (1981), and which the majority today agrees should not be allowed to occur. The primary danger of the mini-trial is that it distracts the jury from its appointed task of determining whether defendant will live or die by focusing too much of its attention on the

question of defendant's guilt or degree of culpability in some prior crime. If permitted, the practice could also greatly extend the time required for sentencing hearings to unreasonable lengths as each prior conviction of defendant is, in turn, relitigated.

In *Silhan* the state at the sentencing hearing offered testimony tending to show that defendant had been convicted in another county for various crimes involving violence. The aggravating circumstance defined by G.S. 15A-2000(e)(3), that "defendant had been previously convicted of a felony involving the use or threat of violence to the person," was not submitted to the jury. Apparently, as we concluded in *Silhan*, the state offered this testimony to rebut defendant's contention that he had no significant prior criminal history. In ordering a new sentencing hearing for other reasons, we noted in *Silhan* that the state would be able to use these other convictions to prove the subsection (e)(3) aggravating circumstance. With concern about the state's use of witnesses to prove the prior convictions and in order to guard against this practice except where necessary, we said in an effort to guide the trial court at the new sentencing hearing:

> We note in this regard that the most appropriate way to show the 'prior felony' aggravating circumstance would be to offer duly authenticated court records. Testimony of the victims themselves should not ordinarily be offered *unless such testimony is necessary to show that the crime for which defendant was convicted involved the use or threat of violence to the person.* There should be no 'mini-Trial' at the sentencing hearing on the questions of whether the prior felony occurred, the circumstances and details surrounding it, and who was the perpetrator. Whether a defendant has, in fact, been convicted of a prior felony involving the use or threat of violence to a person would seem to be a fact which ordinarily is beyond dispute. It should be a matter of public record. If, of course, defendant denies that he was the defendant shown on the conviction record, the occurrence of the conviction, or that the crime involved the use or threat of violence to the person, then the state should be permitted to offer such evidence as it has to overcome defendant's denials.

302 N.C. at 272, 275 S.E. 2d at 484 (emphasis supplied).

State v. McDougall

I strongly disagree with the majority that this language in *Silhan* "may properly be referred to as obiter dictum." It is no more dictum than the majority's present instruction to the trial court with regard to the proper form and instructions on what it refers to as the "fourth issue" in a capital sentencing proceeding. Indeed, the majority relies on the italicized portions of the above *Silhan* passage to sustain its decision here. Furthermore, the majority agrees that a mini-trial of the previous charge ought not to be permitted to occur. The majority states, and I agree, that the proper exercise of the trial judge's authority to control both the direct examination and cross-examination of a witness "will prevent the determination of [the prior conviction] aggravating circumstance from becoming a 'mini-trial' of the previous charge."

The majority concludes, however, that the trial judge in this case did properly exercise his authority to this effect. I disagree with this conclusion.

The trial judge here permitted the witness's direct examination by the state to continue until it now occupies more than six pages in the transcript. The examination covers such details of the prior offense as the victim's age, size and weight; marital status; victim's residence next door to defendant's sister; the time of the offense; defendant's size and weight; and various details involving the act of sexual intercourse with the victim, including defendant's statements during the act and whether defendant ejaculated. This rather extensive direct examination which would have been appropriately complete for the trial of the rape itself prompted an extensive cross-examination by defendant which occupies some nineteen pages of the record. The cross-examination ranges over such subjects as the victim's estrangement from her husband at the time of the rape; the manner in which defendant gained entry into the victim's home; certain prior inconsistent statements allegedly made by the victim; the victim's alleged possession with her husband of certain pornographic movies; and the manner in which defendant exited the victim's home.

An extremely small portion of both the direct examination and the cross-examination dealt with the question of defendant's use or threat of violence to the victim of the Georgia rape. Although the majority agrees that this would have been the only appropriate purpose for the testimony, nevertheless it somehow

concludes that Judge Ferrell did not commit error in allowing the wide-ranging direct examination and cross-examination on subjects irrelevant and immaterial to the only appropriate evidential inquiry. Suffice it to say that if what occurred at this sentencing hearing did not constitute a "mini-trial" on the Georgia rape conviction, then I am hard put to conceive of what would be a mini-trial.

Finally, the majority relies on *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981) *(Taylor II)*, to sustain its decision on this point. What happened in *Taylor II* bears no resemblance to what happened in the instant case. Defendant in *Taylor II* had, in fact, been convicted of the first degree murder of Cathy King at the 25 September 1978 Session of Johnston Superior Court. *State v. Taylor*, 298 N.C. 405, 259 S.E. 2d 502 (1979) *(Taylor I)*. The murder in *Taylor I* was prosecuted as a capital case. The record reveals that only one aggravating circumstance was submitted to the jury, *i.e.*, was the murder "especially heinous, atrocious or cruel." Although the jury answered this aggravating circumstance affirmatively, it also found the existence of the mitigating circumstance that the murder was committed while defendant "was under the influence of mental or emotional disturbance." The jury found beyond a reasonable doubt that the mitigating circumstance was insufficient to outweigh the aggravating and that the aggravating was sufficiently substantial to call for the imposition of the death penalty. Nevertheless, it recommended life imprisonment. This Court found no error in defendant's conviction in *Taylor I*.

In *Taylor II*, relied on by the majority here, the state was permitted to offer the testimony of the pathologist who performed the autopsy on the body of Cathy King, the victim in *Taylor I*. The record in *Taylor II* reveals that the pathologist testified simply as follows:

> I did an autopsy on the body of Cathy King on January 3, 1978. I found six separate gunshot wounds. We found two on the chest, one on the left side below the neck, and one on the right side. There was one on the left back, and there were two on the left arm and one on the right hand. The wounds were very close indicating that the gun was properly several feet away when it was fired, rather than a few

inches. In my opinion, her death was a result of the gunshot wounds that I have described.

There was no cross-examination of the pathologist.

The brief testimony of the pathologist in *Taylor II* was not permitted to degenerate into a mini-trial of defendant's guilt of the Cathy King, *Taylor I*, murder. *Silhan* was not referred to in *Taylor II*. There is no hint in *Taylor II* that this Court intended to, nor in my view did it, retreat from what it said in *Silhan* on this subject.

In *Taylor II* the state argued that it should be permitted to offer this brief testimony of the pathologist, a disinterested witness, to show not only that defendant Taylor had previously been convicted of first degree murder, but also that this murder was accompanied by an aggravating circumstance, *i.e.*, the murder was "especially heinous, atrocious or cruel," G.S. 15A-2000(e)(9), which qualified the murder as potentially deserving of the death penalty. This Court in *Taylor II* agreed essentially with this argument, holding that "[i]f the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed." 304 N.C. at 279, 283 S.E. 2d at 780. *Taylor II* does not hold that testimony will be admissible to show any and all circumstances of the commission of every crime defendant's conviction of which is sought to be offered as an aggravating circumstance. *Taylor II* holds only that when the prior crime is a capital crime, *i.e.*, first degree murder, then brief testimony will be allowed to show those agggravating and mitigating circumstances which were found by the jury in the prior case to have existed.

Finally, there was no necessity for offering any testimony for the purpose of showing that defendant's Georgia rape conviction was a crime involving violence or threat of violence to the victim. The majority notes that defendant's Georgia rape conviction was obtained under section 16-6-1(a) of the Georgia Code which provides, "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will . . . ." Ga. Code Ann. § 16-6-1(a) (1982). This Court said, moreover, in *Taylor II*, 304 N.C. at 279, 283 S.E. 2d at 780: "Nothing else appearing, rape involves the use or threat of violence to the person." Thus, defendant's Georgia rape conviction was "of a felony involving the

use or threat of violence to the person" as a matter of law. Defendant's stipulation that he had been so convicted was in law also a stipulation that the crime involved violence or threat of violence to the person.

There being no necessity then for the state to prove this element through the testimony of witnesses, I think it was error prejudicial to defendant to permit any testimony at all on this point.

The Fair Sentencing Act, now our statutory scheme for sentencing most classes of felons, was recently enacted by our General Assembly. *See* Comment, *The North Carolina Fair Sentencing Act,* 60 N.C. L. Rev. 631, 631 n. 1 (1982). It supports my position that testimony in a capital sentencing hearing should be permitted on the prior conviction aggravating circumstance *only if necessary* to show that the prior conviction did involve the use or threat of violence or that a prior conviction for first degree murder was accompanied by statutory aggravating or mitigating circumstances, or both. This Act provides for presumptive sentences to be imposed for each felony conviction unless aggravating or mitigating circumstances are shown which might justify a greater or a lesser sentence. One of the statutory aggravating circumstances is that "[t]he defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement." G.S. 15A-1340.4(a)(1)(o). Subsection (e) of this statute provides:

> A prior conviction may be proved by stipulation of the parties or by the original or a certified copy of the court record of the prior conviction. The original or certified copy of the court record, bearing the same name as that by which the defendant is charged, shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein.

Because the legislature has so clearly stated its intent as to how prior convictions should ordinarily be proved in the Fair Sentencing Act, I am satisfied the legislature had a similar intent with regard to the proof of prior felony convictions in our capital punishment sentencing statute.

*State v. McCormick*, 397 N.E. 2d 276 (Ind. 1979), also supports my position on this question. In *McCormick* the Indiana Supreme Court considered provisions of the Indiana capital sentencing statute which permitted the state to prove as aggravating circumstances the following (numbered as they appear in the statute):

(7) The defendant has been convicted of another murder.

(8) The defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder.

(9) The defendant was under a sentence of life imprisonment at the time of the murder.

397 N.E. 2d at 278 (citing Ind. Code § 35-50-2-9(b) (Burns 1979)). The Indiana Supreme Court concluded that subsection eight of the sentencing statute violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Court reasoned that this subsection would permit the state to try during the sentencing phase of a capital case another, unrelated murder. The Court concluded that this procedure would be so inflammatory and impermissibly prejudicial in the sentencing phase it would deny defendant due process. The Court considered subsection eight to be qualitatively different from subsections seven and nine of the statute. It said, 397 N.E. 2d at 280-81:

> Similarly, evidence introduced to prove subparts (7) and (9) also does not carry with it the emotional and prejudicial impact which would cause the death penalty to be imposed capriciously. *Gregg v. Georgia*, (1976) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed. 2d 859. Subparts (7) and (9) concern whether '[t]he defendant has been convicted of another murder' and whether '[t]he defendant was under a sentence of life imprisonment at the time of the murder.' Evidence of these aggravating circumstances will almost always be in the form of court or prison records. Unlike a complete presentation of evidence regarding an unrelated murder, this evidence, in the context of this sentencing procedure, would not be of an inflammatory and improperly prejudicial nature. *See Spencer v. Texas*, (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606.

Thus, permitting the sentencing phase of a capital case to degenerate into a mini-trial or retrial of a previous offense, as happened here, may raise serious constitutional questions. Clearly, permitting such a retrial is contrary to the legislature's intent.

### B.

For the reasons stated in my dissenting opinion in *State v. Pinch*, 306 N.C. 1, 38, 292 S.E. 2d 203, 230, *cert. denied*, --- U.S. ---, 74 L.Ed. 2d 622, 103 S.Ct. 474 (1982), I also disagree with the majority's position that it was not error for the trial judge to instruct the jury that it had a duty to recommend death if it answered the various issues submitted favorably to the state. I continue to think that a jury never has a duty to recommend death no matter how it answers the issues. It may *not* recommend death unless it answers the issues in a certain way. Even if it answers these issues that way, however, the jury ought still be permitted to recommend life as, indeed, juries did in *State v. King*, 301 N.C. 186, 270 S.E. 2d 98 (1980), and *State v. Taylor*, *supra*, 298 N.C. 405, 259 S.E. 2d 502 (*Taylor I*).

### C.

I concur with the majority's view of the manner in which the issues should be submitted in a capital case as set out in Part III D of its opinion. I believe, however, that the trial judge's formulation of and instruction on the fourth issue constituted error entitling defendant to a new sentencing hearing. The jury was told on this issue to determine the substantiality of the aggravating circumstances standing alone and without regard to and not discounted by the mitigating circumstances.

Justice Stevens, in a concurring opinion on a denial of certiorari, *Pinch v. North Carolina*, --- U.S. ---, 74 L.Ed. 2d 622-23, 103 S.Ct. 474, 475 (1982), cautioned that such an instruction might be contrary to the holding in *Lockett v. Ohio*, 438 U.S. 586 (1978). He wrote:

In each of these three capital cases the trial judge instructed the jury that it had a duty to impose the death penalty if it found: (1) that one or more aggravating circumstances existed; (2) that the aggravating circumstances were sufficiently substantial to call for the death penalty; and (3) that the aggravating circumstances outweighed the miti-

gating circumstances. There is an ambiguity in these instruc-
tions that may raise a serious question of compliance with
this Court's holding in *Lockett v Ohio*, 438 US 586, 57 L Ed
2d 973, 98 S Ct 2954, 9 Ohio Ops 3d 26 (1978).

On the one hand, the instructions may be read as merely
requiring that the death penalty be imposed whenever the
aggravating circumstances, discounted by whatever miti-
gating factors exist, are sufficiently serious to warrant the
extreme penalty. Literally read, however, those instructions
may lead the jury to believe that it is required to make two
entirely separate inquiries: First, do the aggravating cir-
cumstances, considered apart from the mitigating cir-
cumstances, warrant the imposition of the death penalty?
And second, do the aggravating circumstances outweigh the
mitigating factors? It seems to me entirely possible that a
jury might answer both of those questions affirmatively and
yet feel that a comparison of the totality of the aggravating
factors with the totality of mitigating factors leaves it in
doubt as to the proper penalty. But the death penalty can be
constitutionally imposed only if the procedure assures
reliability in the determination that 'death is the appropriate
punishment in a specific case.' *Lockett*, supra, 438 US, at 601,
57 L Ed 2d 973, 98 S Ct 2954, 9 Ohio Ops 3d 26 (plurality
opinion), quoting *Woodson v North Carolina*, 428 US 280, 305,
49 L Ed 2d 944, 96 S Ct 2978 (1976) (opinion of Stewart,
Powell, and Stevens, JJ.).

. . . .

The petitions for certiorari in these three cases request
the Court to review the decision of the Supreme Court of
North Carolina affirming the death penalty in each case. I do
not criticize the Court's action in denying certiorari because
the question whether the instructions to the juries are con-
sistent with *Lockett* remains open for consideration in col-
lateral proceedings. Moreover, even if relief may not be
warranted in these cases, the North Carolina judiciary may
find it appropriate to make slight changes in the form of its
instructions to avoid the ambiguity I have identified.

--- U.S. ---, 74 L.Ed. 2d at 622-23, 103 S.Ct. at 474-75 (footnote
omitted).

The majority recognizes that this kind of instruction is not contemplated by the statute. Justice Stevens is of the opinion that it may be unconstitutional. I agree with both of these positions and would give defendant a new sentencing hearing on the strength of this error committed by the trial judge.