## CONLEY C. GREER v. ODELL WHITTINGTON, JR., AND CITY SALES, INC.

(Filed 14 January, 1960.)

**1. Trial § 6—**

G.S. 1-180 applies not only to the charge but prohibits a trial judge from expressing an opinion on the evidence at any time during the trial as to what has or has not been shown by the testimony of a witness, and precludes the court from asking a witness questions for the purpose of impeaching or casting doubt on his testimony.

**2. Same—**

It is not improper for the trial court to ask a witness questions for the purpose of clarification of the witness' testimony, but in doing so the court should be careful not to express an opinion on the facts either directly or indirectly.

**3. Same—**

The questions asked a witness by the court in this case *are held*, in the light of all the facts and attendant circumstances, to constitute interrogation for the purpose of clarifying the witness' testimony, and not to amount to a cross-examination of the witness, although prolonged interrogation of a witness is not approved.

**4. Same: Evidence § 58—**

Remarks of the court during cross-examination of a witness to the effect that the cross-examination was not pertinent and that the court would say to the jury that the matter was immaterial, *held* not prejudicial in the absence of a showing that the tenor of the cross-examination was competent, material or relevant for any purpose, since the court, *ex mero motu*, has authority to control the cross-examination and to exclude or strike evidence which is wholly incompetent or inadmissible.

**5. Trial § 19—**

As a general rule, the court, in the exercise of its right to regulate and control the conduct of a trial, has the power of its own motion to strike evidence which is wholly incompetent or inadmissible for any purpose even though no objection is interposed to such evidence.

**6. Evidence § 56—**

    Where a witness for plaintiff has testified to the effect that defendant drove his automobile into the rear of the automobile driven by plaintiff, causing it to turn over, testimony of a previous statement made by the witness to the effect that the accident resulted from the bad driving of plaintiff and that it would have been worse if the witness had not grabbed the wheel, *is held* competent in contradicting the witness on the subject matter about which he had been examined and not objectionable as being in contradiction of the witness on a collateral matter.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Armstrong, J.,* 11 May 1959 Civil Term, of FORSYTH.

Civil action to recover damages for personal injuries.

The jury found by its verdict that the defendants were guilty of negligence, and that plaintiff was guilty of contributory negligence.

From judgment entered in accord with the verdict that plaintiff recover nothing from defendants, and dismissing the action and taxing plaintiff and his surety with the costs, plaintiff appeals.

*Averitt & White by James G. White for plaintiff, appellant.*
*Womble, Carlyle, Sandridge & Rice by H. Grady Barnhill, Jr., for defendants, appellees.*

PARKER, J. Plaintiff offered evidence tending to show that defendant Whittington drove his automobile against the rear bumper of an automobile plaintiff was driving, causing the automobile plaintiff was driving to turn over, and resulting in injuries to plaintiff. This occurred on a public highway. Defendants stipulated that Whittington at the time was an agent, servant and employee of City Sales, Inc., and acting in the scope of his agency.

Defendants offered evidence tending to show that Whittington was driving his automobile behind the automobile plaintiff was driving, that he noticed two automobiles coming up very close behind him, that he blinked his lights and started around the automobile in front of him, that the automobile in front suddenly swerved to the left, that he swerved to his left, applied his brakes and hit the dirt shoulder of the highway, that the automobile in front hit the dirt shoulder, tried to cut back, and turned over, that his automobile did not hit the automobile in front.

One Henry Berry Cason was a driver of one of the automobiles behind Whittington. He testified as a witness for plaintiff. He testified, *inter alia,* that the automobile Whittington was driving hit the automobile in front driven by plaintiff. After Cason had been ex-

amined in chief, and cross-examined, and after a redirect-examination and a recross-examination, the trial judge asked him twenty-six questions, to all of which plaintiff excepted. Plaintiff assigns this as error, contending that the questions asked by the judge amounted to a cross-examination of the witness, and were an expression of opinion by the court in violation of N. C. G.S. 1-180.

N. C. G.S. 1-180 does not apply to the charge alone. . In re Bartlett's Will, 235 N.C. 489, 70 S.E. 2d 482. This statute prohibits a trial judge from asking questions which amount to an expression of opinion as to what has or has not been shown by the testimony of a witness, and from asking a witness questions for the purpose of impeaching him or casting doubt on his testimony. S. v. Cantrell, 230 N.C. 46, 51 S.E. 2d 887; S. v. Perry, 231 N.C. 467, 57 S.E. 2d 774; In re Bartlett's Will, supra.

In Andrews v. Andrews, 243 N.C. 779, 92 S.E. 2d 180, it is said: "It is not unusual nor improper for a trial judge to ask questions of a witness to make clear his testimony on some point, and sometimes to facilitate the taking of testimony, but frequent interruptions and prolonged questionings by the Court are not approved and may be held for prejudicial error if this tends to create in the minds of the jurors the impression of judicial leaning to one side or the other." However, a trial judge in asking a witness competent questions to obtain a proper understanding or clarification of what a witness has said or meant to say, or to bring out some fact overlooked, should be careful to prevent by word or manner what may be understood by the jury as the direct or indirect expression of an opinion on the facts. S. v. Harvey, 214 N.C. 9, 197 S.E. 620.

Plaintiff's complaint alleges that the time of the occurrence was about 6:00 o'clock p.m. on 11 October 1957. He states in his brief: "The court asked the witness for the plaintiff, Henry Cason, twenty-six questions concerning his whereabouts on the morning prior to the collision in question."

While we do not approve of a trial judge asking a witness so many questions, yet, an examination of these questions in the light of all the facts and attendant circumstances disclosed by the record up to that time shows that the questions asked by the judge were for the purpose of obtaining a proper understanding and clarification of the testimony. We are unable to perceive any substantial basis for the contention that these questions amounted to a cross-examination of Cason, or were asked for the purpose of impeachment, or amounted to the expression of an opinion by the judge, or were of such a prejudicial nature as to have had any appreciable effect on the results of the trial below. All the assignments of error to these twenty-six

questions by the judge are overruled. *S. v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264; *Andrews v. Andrews, supra; S. v. Perry, supra.* The cases relied on by plaintiff are clearly distinguishable.

There had been a strike at Holly Farms Poultry Company. The drivers had gone back to work, and 11 October 1957—the day plaintiff was injured—was the date of an election to determine whether the Teamsters' Union would represent the drivers. The union lost the election. Plaintiff and his witnesses, except two doctors and his wife, were members of the union, and had been out on strike. Whittington is president of City Sales, Inc., which, prior to 11 October 1957, had leased equipment to Holly Farms Poultry Company. The day of the election there had been a fight between Raymond L. Maynard, a striker, and James Smith, a non-striker, both drivers for the Holly Farms Poultry Company. One of the two automobiles behind Whittington, when he started to pass the automobile driven by plaintiff was an automobile owned by Maynard, and driven by Albert Motes.

J. B. Wiles, a witness for defendants, testified in chief: On 11 October 1957, he was a guard or watchman at Holly Farms Poultry Company. About five or six o'clock p.m., James Smith came to the plant. He had blood and skinned places on his face. As a consequence of what Smith told him, he went to look for Maynard at several places. Later he heard of the wreck in which plaintiff was injured, and went to the scene. The automobile plaintiff had been driving had been wrecked. The men who had been in it were not there. He and another officer looked at Whittington's automobile, and found no marks on it. He doesn't remember whether Maynard's automobile was there or not. He testified on cross-examination: "I was a guard at the plant. It was my duty to make arrests. I had authority to arrest anyone breaking about the plant there or anywhere in the town; I was a policeman and still am. I was paid by Holly Farms; neither the Town nor the County paid me anything. I received some fees for my work. There were some fees I received; they were not fees for appearance in court, they were fees for arrests, for speeding tickets, or parking tickets, anything. I suppose the defendants paid those, I don't know. I did not receive any County funds or Town funds at all. I received the witness fees and arrest fees from the Town; I suppose they were in turn collected from defendants as part of the costs." At this point the judge said: "What difference would any of that make?" Counsel for plaintiff replied: "I will ask him a question, I think in that regard." The judge: "It seems a waste of time about it. I will say to the jury it doesn't make any difference." Plaintiff excepted, exception 28. The judge

asked counsel what he was objecting to. Counsel replied, to the court's remarks. The judge replied he would overrule the objection. Counsel moved to strike it out. The judge sent the jury to its room, and the following proceedings were had in the absence of the jury, to which plaintiff excepted, exception 29. There were more remarks between the judge and counsel, and then the witness on cross-examination testified in substance: He has been working for the Poultry Farm since 1 February 1957 as a guard. He is a brother of Hoke Wiles, who testified for defendants. He knows defendant Whittington. He knows plaintiff and his witness, John Orr. He doesn't recall seeing them around the plant that day. He had not been employed specifically to deal with the strike and the labor difficulties there, but just generally as a guard or watchman. He did not see the collision. When he arrived at the scene, the occupants of the automobile had left. Plaintiff has no other exception as to Wiles' testimony, either when the jury was present or in its room.

Plaintiff has two assignments of error based on his exceptions numbered 28 and 29, and this is his entire discussion of it in his brief: "The court here interrupted the cross-examination of the defendants' witness, J. C. Wiles, to inquire, 'What difference would any of that make.' The court then made the statement, 'I will say to the jury that it doesn't make any difference.' Here the Court clearly expressed to the jury the opinion that the cross-examination was of no importance and amounted to an endorsement by the Court of the testimony of this witness. The Court undoubtedly has the power to regulate cross-examination. The proper manner of doing so is by sustaining objections. To comment upon the evidence is error."

Plaintiff in his brief does not contend that any of the evidence, in respect to which the judge made his comments, "What difference would any of that make," and "it seems a waste of time about it, I will say to the jury it doesn't make any difference," is competent, material or relevant for any purpose to the issues being tried. The burden is on appellant to show that it was competent, material or relevant, *Johnson v. Heath*, 240 N.C. 255, 81 S.E. 2d 657, and that he has not done.

The remark by the judge was a statement of a legal objection to the evidence. A court is not bound to hear and determine a cause on incompetent evidence, but, as a general rule, in the exercise of its right to control and regulate the conduct of the trial, may, of its own motion, exclude or strike evidence which is wholly incompetent or inadmissible for any purpose, even though no objection is interposed to such evidence. *Electric Park Amusement Co. v. Psichos,* 83 N.J.L. 262, 83 A. 766; *Rider v. State,* 196 Ga. 767, 27 S.E. 2d 667; Stansbury,

North Carolina Evidence, Sec. 37; 88 C.J.S., Trial, Sec. 156; Conrad, Modern Trial Evidence, Vol. 2, p. 330; Jones, Commentaries on the Law of Evidence, 2d Ed., Vol. 5, p. 4527; 58 Am. Jur., Witnesses, Sec. 554.

In *Electric Park Amusement Co. v. Psichos, supra*, the Court said: "We have not been referred to any case which holds that a court may not on its own motion object to the competency, materiality, or relevancy of a question put to a witness, and either overrule it or admit it. We think it may do so."

"It is always in a judge's discretion, as indeed it is his duty, to stop an examination when he can see that its further progress will be futile; it is especially important to do so in a long case like this." *U. S. v. Coplon*, 185 F. 2d 629, 28 A.L.R. 2d 1041, cert. den. 342 U.S. 920, 96 L. Ed. 688.

As to the assignments of error, based on exceptions 28 and 29, prejudicial error is not shown, and these assignments of error are overruled.

John H. Orr, Jr., a witness for plaintiff, was riding in the car with plaintiff, when it turned over. Orr testified in chief to this effect: He felt a bump in the rear of the automobile in which he was riding, then he felt a sudden surge of speed, and the back end of their automobile went over on the shoulder. It whipped back on the road. Plaintiff was fighting for control, he lost control of it, and it turned over. On cross-examination he testified in substance: He figured it was Whittington's automobile which bumped them, and caused their automobile to turn over. Vernon Church is superintendent of transportation for Holly Farms Poultry Company. He can't honestly say he did or did not make this statement to Church the next morning: "Greer made a bad drive, and I grabbed the wheel; and if I hadn't grabbed the wheel the car would have gone into the ditch. . . . I don't remember telling him the reason the car turned over, that Conley made a bad drive and I grabbed the wheel."

Vernon Church testified as a witness for defendants. On direct-examination he testified that the first he knew of the accident was when John H. Orr, Jr., came into his office early the morning after. Then counsel for defendants asked Church what he said to Orr, and what Orr said to him. Counsel for plaintiff objected, unless it is offered for corroboration. The objection was overruled, and plaintiff excepted. Church replied: "I asked Mr. Orr what happened to him. He had a bandage on his head, and I asked him what happened to him; and Mr. Orr said, 'I was in a car with Greer down the road here. He made a bad drive. I grabbed the wheel or it could have been worse. We could have went over a bank.' "

Plaintiff assigns the admission of this evidence as error, contending that the evidence is incompetent, for the reason that it contradicts Orr on a collateral matter.

The real issue in this case was whether Whittington deliberately or negligently drove his automobile into the rear of the automobile plaintiff was driving, and caused it to turn over resulting in injuries to plaintiff, or whether plaintiff deliberately or negligently swerved his automobile to the left, as Whittington was attempting to pass, and in so doing, lost control of the automobile, causing it to turn over, thereby contributing proximately to his own injuries.

In our opinion, the prior inconsistent statement of Orr to Church relates to a matter which was pertinent and material to the pending inquiry, and to the subject matter about which he was examined, and was clearly competent as evidence. *S. v. McPeak,* 243 N.C. 273, 90 S.E. 2d 505; *S. v. Wellmon,* 222 N.C. 215, 22 S.E. 2d 437; *Keerans v. Brown,* 68 N.C. 43; *S. v. Patterson,* 24 N.C. 346; Stansbury, North Carolina Evidence, Sec. 48. This assignment of error is overruled.

The other assignments of error are to the charge. As to these, there is no citation of authority in plaintiff's brief. They merit no discussion, and are overruled.

In the trial below, we find no prejudicial error.

No error.

HIGGINS, J., took no part in the consideration or decision of this case.