Reynolds Am. Inc. v. Third Motion Equities Master Fund Ltd., 2019 NCBC 35.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7086

REYNOLDS AMERICAN INC.,

        Plaintiff,

v.

THIRD MOTION EQUITIES
MASTER FUND LTD.; MAGNETAR
CAPITAL MASTER FUND, LTD.;
SPECTRUM OPPORTUNITIES
MASTER FUND LTD.; MAGNETAR
FUNDAMENTAL STRATEGIES
MASTER FUNDS LTD.;
MAGNETAR MSW MASTER FUND
LTD.; MASON CAPITAL MASTER
FUND, L.P.; ANTON S.
KAWALSKY, trustee for the benefit
of Anton S. Kawalsky Trust UA
9/17/2015; CANYON BLUE CREDIT
INVESTMENT FUND L.P.; THE
CANYON VALUE REALIZATION
MASTER FUND, L.P.; CANYON
VALUE REALIZATION FUND,
L.P.; BLUE MOUNTAIN CREDIT
ALTERNATIVES MASTER FUND
L.P.; BLUEMOUNTAIN FOINAVEN
MASTER FUND L.P.;
BLUEMOUNTAIN GUADALUPE
PEAK FUND L.P.;
BLUEMOUNTAIN SUMMIT
TRADING L.P.; BLUEMOUNTAIN
MONTENVERS MASTER FUND
SCA SICAV-SIF; AMUNDI
ABSOLUTE RETURN CANYON
FUND P.L.C.; CANYON-SL
VALUE FUND, L.P.; PERMAL
CANYON IO LTD.; CANYON
VALUE REALIZATION MAC 18
LTD.; and BARRY W. BLANK
TRUST,

        Defendants.

**ORDER AND OPINION
CONCERNING JUDICIAL REVIEW
OF DISSENTING SHAREHOLDERS'
PERFECTION OF APPRAISAL
RIGHTS**

1. **THIS MATTER** is before the Court upon its own motion to control and regulate the conduct of the upcoming trial, scheduled to commence in the above-

captioned case on June 10, 2019, and to determine the relevance of certain evidence Plaintiff Reynolds American Inc. ("RAI") seeks to introduce at trial.

2. Having considered the parties' opening briefs and response briefs submitted pursuant to the Court's May 9, 2019 Scheduling Order, the arguments of counsel at the May 23, 2019 pretrial hearing, and other appropriate matters of record, the Court concludes that whether Defendants properly perfected their shareholder appraisal rights is a matter beyond the statutorily defined scope of this lawsuit, which RAI instituted under N.C. Gen. Stat. § 55-13-30 for a determination of the fair value of Defendants' shares. Consequently, the Court further concludes that evidence relating to Defendants' perfection of appraisal rights is irrelevant within the context of this proceeding.

*Cravath, Swaine & Moore LLP, by Gary A. Bornstein, Thomas G. Rafferty, Samira Shah, Nicole D. Valente, and Brook E. Tay, and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Donald H. Tucker, Jr., Christopher B. Capel, and Clifton L. Brinson, for Plaintiff Reynolds American Inc.*

*Lowenstein Sandler LLP, by Sheila A. Sadighi, Steven M. Hecht, Maya Ginsburg, Lawrence M. Rolnick, Jennifer A. Randolph, Thomas E. Redburn, Jr., and Frank T.M. Catalina, and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jennifer K. Van Zant and Jessica Thaller-Moran, for Defendants Mason Capital Master Fund, L.P., Anton S. Kawalsky, Canyon Blue Credit Investment Fund L.P., Canyon Value Realization Master Fund, L.P., Canyon Value Realization Fund, L.P., Blue Mountain Credit Alternatives Master Fund L.P., BlueMountain Foinaven Master Fund L.P., BlueMountain Guadalupe Peak Fund L.P., BlueMountain Summit Trading L.P., BlueMountain Montenvers Master Fund SCA SICAV-SIF, Amundi Absolute Return Canyon Fund P.L.C., Canyon-SL Value Fund, L.P., Permal Canyon IO Ltd., and Canyon Value Realization MAC 18 Ltd.*

*Abrams & Bayliss LLP, by J. Peter Shindel, Jr., Kevin G. Abrams, and Matthew L. Miller, and the Sanderson Law Firm, PLLC, by George F.*

*Sanderson, III, for Defendants Magnetar Capital Master Fund, Ltd., Magnetar Fundamental Strategies Master Fund Ltd., Magnetar MSW Master Fund Ltd., Third Motion Equities Master Fund Ltd., and Spectrum Opportunities Master Fund Ltd.*

*Shanahan Law Group, PLLC, by Kieran J. Shanahan, Brandon S. Neuman, and Christopher S. Battles, for Defendant Barry W. Blank Trust.*

Bledsoe, Chief Judge.

## I.

## BACKGROUND

3. The majority of the background facts asserted in RAI's Complaint for Judicial Appraisal (the "Complaint") and relevant to this decision are not in dispute.

4. On July 25, 2017, RAI, a corporation organized under the laws of the State of North Carolina, merged into an indirect, wholly owned subsidiary of British American Tobacco p.l.c. ("BAT"). (Compl. Judicial Appraisal ¶ 2 [hereinafter "Compl."], ECF No. 4.) RAI continued as the surviving entity. (Compl. ¶ 2.)

5. Defendants are former RAI shareholders who asserted appraisal rights under N.C. Gen. Stat. § 55-13-21. (Compl. ¶ 40; Am. Case Management Report 3 [hereinafter "CMR"], ECF No. 33.) On June 25, 2017, RAI sent Defendants written appraisal notices and forms required by N.C. Gen. Stat. § 55-13-22. (Compl. ¶ 41.) The appraisal notices provided Defendants with an address and deadline for returning their appraisal forms and share certificates and stated that RAI estimated the fair value of its common stock to be $59.64 per share. (Compl. ¶ 41.)

6. Between August 14 and August 31, 2017, RAI received each Defendant's completed appraisal form and share certificates. (Compl. ¶¶ 43–45.) RAI then paid

each Defendant cash for the total value of that Defendant's respective shares, plus interest, using RAI's estimated fair value. (Compl. ¶¶ 43–45.)

7.  In October 2017, RAI received notices from Defendants stating that they were dissatisfied with the amount RAI paid and providing each Defendant's estimated fair value of RAI's common stock.[1] (Compl. ¶¶ 46–48.) Defendants' estimates ranged from $81.21 to $94.33 per share. (Compl. ¶¶ 46–48.)

8.  On November 29, 2017, RAI filed its Complaint and began this action for judicial appraisal under N.C. Gen. Stat. § 55-13-30.

9.  On February 14, 2018, RAI and Defendants submitted a joint Amended Case Management Report to the Court (the "Case Management Report"), as required by Rule 9 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCRs"). The Case Management Report contained an agreed-upon summary of the case, as well as each side's specific contentions. (CMR 3–6.) RAI contended that its $59.64 per-share fair value estimate already paid to Defendants equaled or exceeded the fair value of Defendants' shares and that this price was supported by the market, the merger deal process, investment bank estimates, and the approval of the merger by the majority of RAI's shareholders. (CMR 3–4.) On the basis of these contentions, RAI asked the Court to affirm RAI's fair value estimate. (CMR 4.) Each group of Defendants disagreed with RAI's contentions and provided a summary of their reasons for disputing RAI's fair value estimate. (CMR 4–6.)

---

[1] Defendants have litigated this case as three groups of multiple shareholders. Each of the three groups provided RAI with a different estimate for the fair value of RAI's common stock. (Compl. ¶¶ 46–48.)

10. Following a BCR 9.3 case management conference with the parties, the Court set the trial of this case for June 10, 2019, subject to any necessary extensions in the event either side filed summary judgment motions. No summary judgment motions were filed, and the trial will commence on June 10, 2019.

11. Beginning in mid-to-late April 2019, a dispute arose between the parties concerning the breadth and scope of Defendants' pretrial disclosures. RAI and Defendants submitted statements to the Court by e-mail concerning this dispute, and the Court held a telephone conference on May 1, 2019 to address the matter. Based upon its review of the parties' pre-conference submissions, the Court began the May 1 conference by noting that Defendants represented that RAI had refused to stipulate that Defendants had properly perfected their appraisal rights and that certain witnesses identified by Defendants appeared to have been identified solely to address issues related to perfection. The Court asked RAI to explain its refusal to stipulate that Defendants had perfected their rights and directed Defendants to answer whether any stipulations by RAI on the topic of perfection might reduce the number of witnesses for Defendants at trial. In response, counsel for RAI reported that although a full discussion on the issue had not occurred, RAI would be willing to stipulate that certain Defendants had perfected their appraisal rights. RAI forecast, however, that it would seek to prove certain other Defendants did not properly perfect their rights to appraisal, narrowing the amount in dispute and removing certain Defendants from the case after the presentation of evidence. Defendants responded

that RAI had waived any right it may have had to challenge the perfection of Defendants' appraisal rights at trial.

12. In an effort to narrow or resolve the parties' dispute concerning Defendants' pretrial disclosures, the Court ordered the parties to meet and confer regarding, among other things, possible stipulations regarding whether Defendants properly perfected their appraisal rights.

13. On May 8, 2019, the parties submitted a joint report concerning the results of their negotiations. The Court held another telephone conference to address matters contained in the report that same day. In the joint report and on the telephone conference, RAI took the position that whether Defendants had perfected their appraisal rights was an issue for trial and that, with respect to those Defendants RAI would not stipulate had perfected their appraisal rights, Defendants bore the burden of proving perfection. (Joint Status Report 1, ECF No. 163.) Defendants argued (i) that RAI had admitted, through the pre-litigation process and in its Complaint, that Defendants had perfected their appraisal rights; (ii) that RAI had waived its ability to contest the issue of perfection; and (iii) that RAI was attempting to alter the statutory process for perfection of appraisal rights, which did not require documentary proof of how shares were voted. (Joint Status Report. 2–3.)

14. On May 9, 2019, the Court ordered the parties to submit briefing on the issue of whether Defendants' perfection of appraisal rights is a justiciable matter for trial, including whether Defendants' proper perfection of these rights could be determined as a matter of law and whether RAI, through filings or conduct in this

litigation, had admitted or waived its right to contest Defendants' entitlement to appraisal. The parties submitted their initial briefs on May 15, 2019 and response briefs on May 21, 2019. The Court heard arguments on the issue at the May 23, 2019 pretrial hearing.

15.    This issue is now ripe for resolution.

II.

ANALYSIS

16.    As an initial matter, the Court notes that the deadline for summary judgment motions has passed, and no party moved the Court for a determination concerning Defendants' perfection of appraisal rights. Therefore, the parties' contentions concerning perfection are now more properly framed as competing requests that the Court determine whether the perfection of Defendants' appraisal rights is a proper matter for adjudication at trial and thus whether evidence relating to the perfection of Defendants' appraisal rights is relevant to this proceeding.

17.    "[A]s a general rule," a trial court, "in the exercise of its right to control and regulate the conduct of the trial, may, of its own motion, exclude or strike evidence which is wholly incompetent or inadmissible for any purpose[.]" *Greer v. Whittington*, 251 N.C. 630, 634, 111 S.E.2d 912, 916 (1960); *State v. McPherson*, 7 N.C. App. 160, 166, 171 S.E.2d 464, 467 (1970). "Evidence which is not relevant is not admissible." N.C. R. Evid. 402. Accordingly, a trial court may, on its own motion, exclude evidence which is not relevant or material to the issues to be tried. *McPherson*, 7 N.C. App. at

166, 171 S.E.2d at 467 (finding no error where trial court excluded evidence on its own objection that was not relevant or material).

18.     Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. R. Evid. 401. While a trial court's rulings on relevance are not "technically" discretionary, "such rulings are given great deference on appeal." *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quoting *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991)).

19.     After reviewing the parties' briefs, the applicable statutes, and relevant case law, the Court concludes that whether Defendants perfected their appraisal rights is not a proper matter for determination in this proceeding under N.C. Gen. Stat. § 55-13-30 and thus that evidence relating to the perfection of Defendants' appraisal rights is not relevant to any issue in this case and should not be admitted at trial. The Court reaches this conclusion for two reasons. First, the plain language of section 55-13-30 does not contain a requirement that dissenting shareholders prove their perfection of appraisal rights, but instead states such shareholders are entitled to a specific judgment in a proceeding commenced under the statute. Second, even if section 55-13-30 permitted a court to review whether dissenting shareholders properly perfected their appraisal rights, RAI has not sought a declaratory judgment or some other form of relief requiring the Court to determine whether certain Defendants failed to perfect their rights here.

A. N.C. Gen. Stat. § 55-13-30 Controls the Subject Matter of the Court Action it Creates

20. The parties' dispute concerning Defendants' entitlement to a judicial appraisal of their shares stems from RAI's suspicion that certain Defendants did not fulfill all of the statutory requirements needed to assert appraisal rights. In particular, RAI represents that it has concerns that certain Defendants did not comply with N.C. Gen. Stat. § 55-13-21(a)(2), which requires that a dissenting shareholder "[n]ot . . . vote, or cause or permit to be voted, any shares of any class or series in favor of the [merger]." N.C. Gen. Stat. § 55-13-21(a)(2). RAI contends that in an appraisal proceeding commenced under section 55-13-30, each defendant shareholder bears the burden of establishing that it complied with every requirement needed to assert appraisal rights and demand payment under Chapter 55, Article 13 of the North Carolina General Statutes ("Article 13"). RAI believes certain Defendants will not be able to do so.

21. Defendants vehemently disagree with RAI's position. Defendants argue that section 55-13-30 creates the right to a court action for judicial appraisal, does not contain a procedural requirement that the dissenting shareholders prove their perfection, and does not require the Court to determine whether appraisal rights were properly perfected. Instead, Defendants contend that the issues before the Court are limited solely to those issues concerning fair value, court costs, and expenses set out in sections 55-13-30 and 55-13-31.

22. While not concluding that matters concerning the perfection of appraisal rights are beyond judicial review, the Court agrees with Defendants that such issues are beyond the scope of a lawsuit initiated under section 55-13-30.

23. As the Court has previously noted, "[t]here is little case law in North Carolina" concerning judicial appraisal actions. *Reynolds Am. Inc. v. Third Motion Equities Master Fund, Ltd.* 2018 NCBC LEXIS 94, at \*6 (N.C. Super. Ct. Sept. 12, 2018); *see* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 27.06[1] (7th ed. 2017) ("There is no reported North Carolina decision determining the fair value of shares in an appraisal proceeding."). It is therefore unsurprising that the parties' current dispute raises an issue of first impression under North Carolina law. Acknowledging this, the Court begins its analysis by turning to the plain language of the relevant statutes. "When the language of a statute is clear and without ambiguity, it is the duty of [courts] to give effect to the plain meaning of the statute[.]." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006).

24. Article 13 of the North Carolina Business Corporation Act is divided into four Parts, the first three of which are relevant here. Part 1, "Right to Appraisal and Payment for Shares," provides definitions for the rest of the Article, N.C. Gen. Stat. § 55-13-01, outlines which corporate actions give rise to a right to appraisal, *id.* § 55-13-02, and defines who may assert appraisal rights, *id.* § 55-13-03. Part 2 contains a series of provisions laying out the procedure for the exercise of appraisal rights. *Id.* §§ 55-13-20–28. Part 3, titled "Judicial Appraisal of Shares," contains only two

sections and begins with the statute providing for a court action for the judicial appraisal of shares, section 55-13-30. *See id.* § 55-13-30(a).

25. Section 55-13-30 allows a corporation facing unsettled demands for payment by dissenting shareholders under section 55-13-28 to institute a proceeding in the "the Superior Court Division of the General Court of Justice to determine the fair value of the shares and accrued interest*." Id.* "The jurisdiction of the superior court in which the proceeding is commenced . . . is plenary and exclusive," and there is no right to a trial by jury. *Id.* § 55-13-30(d). The statute provides that "[t]he corporation shall make all shareholders . . . whose demands remain unsettled parties to the proceeding as in an action against their shares[.]" *Id.* § 55-13-30(c). If a corporation fails to commence the proceeding created by section 55-13-30 within sixty days after receiving a dissenting shareholder's demand for the dissenter's estimated fair value of the dissenter's shares, the corporation must pay the shareholder the amount demanded. *Id.* § 55-13-30(a).

26. The final subsection of section 55-13-30 provides as follows:

(e) Each shareholder made a party to the proceeding is entitled to judgment either (i) for the amount, if any, by which the court finds the fair value of the shareholder's shares, plus interest, exceeds the amount paid by the corporation to the shareholder for the shareholder's shares or (ii) for the fair value, plus interest, of the shareholder's shares for which the corporation elected to withhold payment under G.S. 55-13-27.

*Id.* § 55-13-30(e).

27. Upon review, the Court draws two conclusions about section 55-13-30. First, section 55-13-30's language is plain and unambiguous. Second, this plain and

unambiguous language limits the subject matter of a court action commenced under section 55-13-30 and the relief available in that action.

28. The first subsection of section 55-13-30 states the circumstances under which a corporation shall commence a judicial appraisal action—when shareholder demands under section 55-13-28 remain unsettled—and states that the court proceeding initiated will "determine the fair value of the shares and accrued interest." *Id.* § 55-13-30(a). There is no language in this subsection allowing or requiring a review of a dissenting shareholder's entitlement to appraisal. The lack of such a provision is consistent throughout the statute. Instead, section 55-13-30 focuses on providing a determination of fair value to resolve outstanding demands, *id.*, by requiring the corporation to make "all shareholders . . . whose demands remain unsettled parties to the proceeding," *id.* § 55-13-30(c), providing the court with exclusive jurisdiction over the judicial appraisal proceeding, and allowing the court to appoint appraisers "to receive evidence and recommend a decision on the question of fair value," *id.* § 55-13-30(d).

29. Most importantly, section 55-13-30(e) places clear limitations on the possible outcomes of an action brought under section 55-13-30. Subsection (e) provides that "each shareholder made a party to the proceeding *is entitled to judgment*" for one of two possible amounts. *Id.* § 55-13-30(e) (emphasis added). The language used is restrictive, with the word "either" preceding the two enumerated options for judgment and the conjunction "or" positioned between them. *Either*, American Heritage Dictionary (2d coll. ed. 1985) ("One or the other . . . [u]sed before

the first of two or more coordinates or clauses linked by *or*[.]").[2]  Which form of judgment a dissenting shareholder is "entitled to" depends upon whether the dissenter is (i) a shareholder that has already received a payment consistent with the corporation's estimated fair value or (ii) a shareholder "for which the corporation elected to withhold payment under G.S. 55-13-27." N.C. Gen. Stat. § 55-13-30(e).  The statute provides no third option whereby the corporation may obtain a judgment declaring certain shareholders are not entitled to appraisal after failing to perfect their appraisal rights.  *Id.*  Section 55-13-31, which deals with assessment of court costs and expenses, contains no provision authorizing such relief either.  *Id.* § 55-13-31.

30.    RAI nevertheless insists that Defendants must prove that they perfected their appraisal rights at trial and that this requirement is inherent to an appraisal proceeding commenced under section 55-13-30.  RAI advances several arguments in support of this assertion.

31.    First, RAI argues that Defendants must prove they met each statutory requirement to assert appraisal rights under Article 13 by citing section 55-13-21(c). This provision states "[a] shareholder who fails to satisfy the requirements . . . of this section," which include the requirement that the shareholder not vote in favor of the proposed corporate action, "is not entitled to payment under this Article." *Id.* § 55-13-21(c).  Essentially, because section 55-13-21(c) states a consequence for failing to

---

[2] "In construing the ordinary and plain meaning of disputed terms," North Carolina courts may use "standard, nonlegal dictionaries as a guide." *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 152, 388 S.E.2d 557, 568 (1990) (internal quotation marks omitted).

comply with a step a shareholder must take to be entitled to appraisal rights, RAI contends Defendants have the burden of proving to the Court that Defendants properly completed all steps to avoid that consequence and receive a judicial appraisal of their shares. The Court disagrees.

32. Article 13 contains numerous steps that corporations and dissenting shareholders must take to be entitled to judicial appraisal as a means of settling their disputes over share value. *Id.* §§ 55-13-20–31. Of these, only sections 55-13-30 and 55-13-31 deal directly with the subject matter of a judicial appraisal action, the trial court's jurisdiction over that action, the required parties for such an action, and the relief the trial court may provide. *See id.* §§ 55-13-30–31. "[W]here one statute deals with a particular subject or situation in specific detail, while another statute deals with the subject in broad, general terms, the particular, specific statute will be construed as controlling, absent a clear legislative intent to the contrary." *Nucor Corp. v. Gen. Bearing Corp.*, 333 N.C. 148, 154–55, 423 S.E.2d 747, 751 (1992). Thus, while section 55-13-21(c) may be relevant to the process of asserting appraisal rights and entitle a corporation to refuse to pay a dissenting shareholder under Article 13, the Court is not able to conclude that this statutory provision overrides section 55-13-30(e)'s clear instruction that, after a corporation has filed a complaint for judicial appraisal, "[e]ach shareholder made a party to the proceeding is entitled to judgment either (i) for the amount, if any, by which the court finds the fair value of the shareholder's shares, plus interest, exceeds the amount paid by the corporation" or "(ii) for the fair value, plus interest, of the shareholder's shares for which the

corporation elected to withhold payment under G.S. 55-13-27." N.C. Gen. Stat. § 55-13-30(e).

33. Second, at oral argument RAI pointed the Court to two decisions in other jurisdictions that have, like North Carolina, enacted provisions of the Model Business Corporation Act (the "MBCA") providing for judicial appraisal of dissenters' shares. Although RAI conceded that these decisions were not on all-fours with this case, RAI argued that these cases represented instances in which courts in other MBCA jurisdictions have reviewed and determined matters relating to perfection of appraisal rights in judicial appraisal actions.

34. The first case RAI cites is an unpublished decision from the Court of Appeals of Wisconsin, *Kohler Co. v. Sogen International Fund, Inc.*, No. 99-2115, 2000 Wisc. App. LEXIS 756 (Wis. Ct. App. Aug. 9, 2000). In that case, a corporation filed a petition beginning a judicial appraisal action against a certain number of dissenting shareholders. *Id.* at *3. Two individual shareholders who had not timely asserted their appraisal rights and had not been sued intervened and were joined to the case. *Id.* at *4. The corporation moved for a declaratory judgment that the two shareholders had not satisfied certain statutory requirements, were not entitled to payment under Wisconsin's statutes enacting the judicial appraisal provisions of the MBCA, and could not be parties to the judicial appraisal proceeding. *Id.* The trial court granted the corporation's motion, and the court of appeals affirmed that decision. *Id.* at *1.

35. The second case RAI proffers for the Court's consideration is the Georgia Court of Appeals' decision in *Magner v. One Securities Corp.*, 574 S.E.2d 555 (Ga. Ct. App. 2002). There, two corporations filed a declaratory judgment action and "sought a declaration establishing whether [certain shareholders] preserved any right to dissent to" certain mergers giving rise to possible appraisal rights. *Id.* at 556. In the alternative, the corporations sought a judicial appraisal under Georgia's section 14-2-1330, "[i]n the event the court concluded such dissenters' rights existed[.]" *Id.* The trial court granted the corporations summary judgment on their declaratory judgment claim, and the appellate court affirmed. *Id.*

36. After a review of these cases, the Court concludes neither provides support for RAI's position.

37. As an initial point, unlike the corporations in *Kohler or Magner*, RAI admitted at oral argument that it is not seeking a declaration concerning Defendants' entitlement to judicial appraisal by way of a claim or some other request for relief. Instead, RAI contends that the judicial appraisal proceeding it began under section 55-13-30 inherently places a burden upon Defendants to show they are entitled to appraisal rights by proving their compliance with the statutory requirements of Article 13. Neither *Kohler* nor *Magner* can be read as supporting this position. If anything, the fact that both cases involved some separate claim or motion for a judicial declaration prompting a court determination as to perfection cuts against RAI's argument that defendants in a judicial appraisal proceeding must always prove their proper perfection of appraisal rights.

38.   Further, and more importantly, neither *Kohler* nor *Magner* directly analyzed whether the declaratory relief sought in each case was within the purview of a judicial appraisal proceeding commenced under their jurisdictions' statutes enacting the MBCA.  Specifically, neither appellate court addressed the fact that its own state's judicial appraisal statutes contained restrictive language which, like the language in section 55-13-30, would appear to preclude a corporation from seeking a determination as to whether a shareholder properly perfected its appraisal rights within the confines of a judicial appraisal proceeding.  *See* Ga. Code Ann. § 14-2-1330 (1999) ("*Each dissenter made a party* to the proceeding *is entitled to judgment for the amount* which the court finds to be the fair value of his shares, plus interest to the date of judgment." (emphasis added)); Wis. Stat. § 180.1330 (1998) ("*Each dissenter made a party* to the special proceeding *is entitled to judgment for any of the following*: (a) The amount, if any, by which the court finds the fair value of his or her shares, plus interest, exceeds the amount paid by the corporation.  (b) The fair value, plus accrued interest, of his or her shares acquired on or after the date specified in the dissenter's notice under s. 180.1322 (2) (c), for which the corporation elected to withhold payment under s. 180.1327." (emphasis added)).  Consequently, neither opinion offers persuasive reasoning for this Court to consider, much less an argument for ignoring the plain language of N.C. Gen. Stat. § 55-13-30 entitling dissenting shareholders made a party to an appraisal proceeding to specific judgments.

39.   Finally, RAI argues that without a requirement that dissenting shareholders prove their entitlement to appraisal rights (or some other avenue by

which a corporation may challenge perfection in a judicial appraisal proceeding), section 55-13-30 puts corporations in an impossible position of choosing to either comply with the procedures laid out by Part 2 of Article 13 and bring a claim for judicial appraisal under section 55-13-30, thereby forfeiting the right to challenge a shareholder's entitlement to appraisal, or to take a gamble by asserting that a shareholder is not entitled to appraisal, thereby risking any negative consequences that might follow should the corporation be incorrect, all without the benefit of discovery. Particularly, RAI argues that corporations in its position have virtually no way to determine how a beneficial shareholder's shares held through a brokerage account or other financial institution were actually voted in the short period between the date the corporate action becomes effective and the date the corporation must send out appraisal notices under section 55-13-22(b) to shareholders who satisfy the requirements of section 55-13-21.

40. To the extent RAI's points have merit, this Court is not the proper body to make decisions based on such policy concerns. *See Alexander v. DaimlerChrysler Corp.*, 2004 NCBC LEXIS 3, at *29 (N.C. Super. Ct. Jan. 30, 2004) ("It is not the court's function to rewrite legislation to make it better.") The North Carolina Constitution delegates that role to our General Assembly. *Ramsey v. N.C. Veterans Comm'n*, 261 N.C. 645, 648, 135 S.E.2d 659, 661 (1964) ("Only the General Assembly may amend or rewrite a statute." (citing N.C. Const. art. II, § 1)).

41. Indeed, RAI's position essentially asks the Court to graft into section 55-13-30 a piece of section 262 of the Delaware General Corporation Law, which creates a

two-step process in which the Delaware Chancery Court first "determine[s] the stockholders who have complied with this section and who have become entitled to appraisal rights," Del. Code Ann. tit. 8, § 262(g), and then conducts an appraisal proceeding to determine the fair value of the stockholders' shares, *id.* § 262(h). There is much to commend about the clarity and simplicity offered by Delaware's statute. Here, however, the Court cannot ignore the lack of any such statutory provision in North Carolina's Business Corporation Act, nor can it create one on its own. *Ramsey*, 261 N.C. at 648, 135 S.E.2d at 661. The General Assembly is presumed to act "with full knowledge of prior and existing law and its construction by the courts." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 685, 562 S.E.2d 82, 92 (2002). Should the General Assembly have wished to create a process in a judicial appraisal action whereby the Court is to review each shareholder's entitlement to appraisal before making a determination on fair value, it could have clearly expressed that intent in section 55-13-30, and Delaware's section 262 would have provided a useful template. That the General Assembly did not, and instead chose to adopt the provisions for judicial appraisal actions contained in the MBCA, which does not contain any procedure similar to Delaware's section 262(g), further supports the Court's conclusion here.

42. The law of this State has long recognized that "[w]here jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (quoting

*Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975)); *cf. Allen v. Hunnicutt*, 230 N.C. 49, 51, 52 S.E.2d 18, 19 (1949) ("The remedy provided by statute for the enforcement of a right created by statute is exclusive. A party asserting such right must pursue the prescribed remedy."). Here, where RAI has instituted a judicial appraisal action under section 55-13-30, the Court must observe the procedures and limitations provided by statute. As explained above, section 55-13-30 expressly instructs the Court that a proceeding commenced under section 55-13-30 is "to determine the fair value of the shares and accrued interest" and provides that each shareholder made a party to the proceeding "is entitled to" judgment in one of two particular forms. N.C. Gen. Stat. § 55-13-30(a), (e). Requiring Defendants to prove that they perfected their appraisal rights in order to be entitled to a judgment for the fair value of their shares is incompatible with this plain and unambiguous language, which restricts the relief available in a judicial appraisal proceeding and does not allow for a judgment dismissing certain shareholders for failing to properly perfect their appraisal rights.

43. Accordingly, the Court concludes that whether Defendants perfected their appraisal rights is an issue beyond the scope of the Court's consideration in this judicial appraisal proceeding. Evidence relating to Defendants' perfection of their appraisal rights is thus irrelevant to the subject matter of this case and will be excluded from trial.

B.  RAI Does Not Seek a Judicial Determination Relating to Defendants' Perfection of Appraisal Rights

44.  Even if N.C. Gen. Stat. § 55-13-30 could be construed to permit the Court to review whether a dissenting shareholder perfected its appraisal rights within a proceeding commenced under that statute, RAI has not asserted a claim or other basis to raise the issue of Defendants' perfection at trial, and the plain language of section 55-13-30 does not require the Court to determine matters concerning perfection as part of the appraisal proceeding.

45.  RAI began this action by filing a document titled "Complaint for Judicial Appraisal." (Compl. 1.)  The Complaint stated specifically that it was filed "pursuant to N.C. Gen. Stat. § 55-13-30," (Compl. 2), and requested only that the Court, (i) "pursuant to N.C.G.S. 55-13-30, determine the fair value of Defendants' shares and accrued interest," (ii) "enter a money judgment in favor of Plaintiff . . . to the extent of [any] overpayment, plus accrued interest," and (iii) assess costs and expenses, including counsel and expert fees, against Defendants pursuant to N.C. Gen. Stat. § 55-13-31, (Compl. 11).  RAI did not seek a judicial determination or declaration that Defendants failed to perfect their appraisal rights and did not forecast Defendants' perfection of rights as an issue for judicial determination in the parties' Case Management Report.  RAI also failed to plead any facts demonstrating an actual controversy existed regarding Defendants' right to appraisal.

46.  Further, while RAI did indicate at the BCR 9.3 case management conference that it would be seeking facts in discovery concerning Defendants' entitlement to appraisal, RAI did not subsequently move to amend its Complaint to include a

declaratory judgment or other claim seeking a determination of Defendants' rights or add facts to support such a claim. As noted above, RAI contends such steps are unnecessary because section 55-13-30 requires dissenting shareholders to prove perfection in an appraisal proceeding before they are entitled to a judgment for any amount. The Court disagrees.

47. To the extent section 55-13-30 does not prevent a trial court from reviewing matters related to the perfection of shareholder appraisal rights, for the reasons detailed above, the Court concludes that the plain language of section 55-13-30 does not make such a review an inherent part of a judicial appraisal proceeding under the statute. Thus, to the extent section 55-13-30 allows a corporation to bring a lawsuit in which perfection may be reviewed, RAI's failure to bring a claim for declaratory judgment, request other relief, or even plead facts showing the existence of a controversy as to Defendants' perfection of appraisal rights would still place a determination regarding Defendants' right to participate in this proceeding beyond the scope of the present case. *See* N.C. R. Civ. P. 57 ("The procedure for obtaining a declaratory judgment . . . shall be in accordance with these rules[.]"); *see also* N.C. R. Civ. P. 8(a)(1) ("A pleading which sets forth a claim for relief . . . shall contain . . . [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief.").

48. For this additional reason, evidence relating to Defendants' perfection of appraisal rights is irrelevant to this proceeding and will be inadmissible at trial. *See* N.C. R. Evid. 402; *Greer*, 251 N.C. at 634, 111 S.E.2d at 916.

49. To be clear, the Court's holdings herein should not be read as placing a corporation's or dissenting shareholder's compliance with Part 2 of Article 13 beyond all judicial review. Instead, the Court today decides only that (i) the proper perfection of a dissenting shareholder's appraisal rights is not a matter for determination in a judicial appraisal proceeding commenced under section 55-13-30, (ii) in any event, RAI has not brought a claim or requested relief requiring a judicial determination of whether Defendants are entitled to a judicial appraisal of their shares, and (iii) evidence concerning whether Defendants perfected their appraisal rights is thus irrelevant to this proceeding.

III.

CONCLUSION

50. **WHEREFORE**, the Court, on its own motion and after full briefing and hearing, and in the exercise of its right to control and regulate the conduct of the upcoming trial of this matter, hereby **ORDERS** that evidence concerning whether Defendants properly perfected their rights to a judicial appraisal of their shares shall be excluded from trial.[3]

---

[3] As a result of the Court's holdings herein, the Court concludes it need not reach a decision on the issues of admission or waiver raised in the parties' briefing. Further, having concluded that whether Defendants properly perfected their appraisal rights is not an issue for determination in a judicial appraisal action under N.C. Gen. Stat. § 55-13-30, and that RAI has not asked for such a determination, the Court does not reach a conclusion on whether Defendants' perfection of appraisal rights could be determined as a matter of law.

**SO ORDERED**, this the 4th day of June, 2019.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge